### Staunton.

PEOPLES BUILDING, LOAN AND SAVINGS ASSOCIATION v. TINSLEY.

SEPTEMBER 15, 1898.

Absent, Cardwell, J.

1. BUILDING ASSOCIATIONS—*Contracts—Where Payable—By-Laws.*—A member of a building association must be considered as having contracted with reference to the by-laws of the association. If these require that all remittances for loans, premiums, dues, &c., shall be made to an officer at its office in another State, a bond given by one of its members for a loan made to him will be deemed to be payable at its said office, although nothing appears on the face of said bond, or the deed of trust securing it, to show where it is payable, and the borrower is a resident of and received the money in this State, and secured the same by a deed of trust on real estate located here.

2. USURY—*Conflict of Laws—Place of Payment Governs.*—If a contract made in this State, but to be performed in another State, is valid according to the laws of the latter State, it will be enforced here, although if to be performed here it would be usurious according to the laws of this State.

3. BUILDING ASSOCIATIONS—*Loans—Amount of Credit for Stock—Case in Judgment.*—The amount of credit to which a borrowing member of a building association is entitled on account of his stock which he has pledged as collateral is to be determined by the terms of his contract as construed and determined by the laws of the State where the contract is to be performed. In the case in judgment, the contract is a New York contract, and according to the laws of that State the borrower is only entitled to be credited with a sum equal to the value, or the amount standing to the credit of his certificates on the books of the association, and that value is ascertained by adding together all monthly instalments paid in, and the dividends declared thereon, and deducting therefrom the losses ascertained by the shareholders to have been sustained by the association,

Appeal from a decree of the Hustings Court of the city of Radford pronounced October 25, 1897, in a suit in chancery wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Smith & King*, for the appellant.

*W. R. Wharton*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

On April 2, 1892, J. W. Tinsley and R. G. Noel, then members of the Peoples Building, Loan and Savings Association, and owners of thirty-seven shares of its stock, borrowed from it the sum of $2,500, payable in eight years. To secure the payment of that sum, which was evidenced by their bond, they executed a deed of trust on a house and lot situated in the city of Radford, and pledged their shares of stock as collateral security. During the eight years the loan was to continue, the borrowers undertook to pay monthly $10.41 as interest, and $10.41 as premium thereon. If they failed to make such payments, and such default continued for three · months, it was provided that the principal sum, together with all unpaid interest and premiums, should immediately become due and payable. By the terms of their contract of subscription to the stock of the association they were required to pay sixty-five cents on each share of stock every month for ninety-six months, and in default of such payment they were liable to certain fines. Tinsley and Noel paid the dues upon their stock, and the interest and premiums on the loan, until November 1, 1896, when all payments ceased. In March, 1897, the appel-

lee Tinsley, who had become the owner of the house and lot upon which the deed of trust was given, instituted this suit, charging, among other things, that the loan was usurious, and stating the amounts paid thereon, and praying for an account to ascertain the balance, if any, due from him.

In May following, the appellant filed its answer, in which, among other things, it denied the usury charged, stated that it then elected to declare the loan to be due because of the appellee's failure to make payments thereon according to the contract of borrowing, and claimed that the balance due, after giving all proper credits, was $1,587.71.

The commissioner of the court to whom the account was referred reported that the contract was not usurious, and that the balance due to the association from the appellee was $802.51, including $56.25 insurance premium, paid by the Building Association.

From the decree confirming that report this appeal was allowed.

The only error assigned by the appellant association is that the commissioner and the court ought to have found the balance due from the appellee to be $1,587.71, instead of $802.51.

The appellee, under Rule *IX.* of the court, assigns as error the action of the court in holding that the contract of borrowing was not usurious.

We will consider the appellee's assignment of error first, inasmuch as no correct statement of account between the parties can be made until the question of usury is settled.

Under the decisions of this court in the cases of *Nickels* v. *Peoples Building, Loan and Savings Association* (appellant company), 93 Va. 380, and *Ware* v. *Bankers Loan and Improvement Company,* 95 Va. 680, the contract under consideration must be held to be a New York contract. It is true that there is nothing in the bond given for the money borrowed, nor in the deed of trust executed to secure its payment, to show where the con-

tract was to be performed. It is also true that the appellee was a resident of, and received the money in, this State, and that the property embraced in the deed of trust is situated in the city of Radford. These facts would, if nothing else appeared, be sufficient to make it a domestic contract, but article 16 of the by-laws of the appellant association provides and requires that all remittances for admission, monthly and quarterly instalments, fines, penalties, interest and premiums, and all other payments shall be made to the secretary of the association at its principal office in Geneva, in the State of New York. As a member of the association, the appellee must, as was held in the cases referred to above, be considered as having contracted with reference to that by-law, which made it a contract to be performed in the State of New York. The fact that some of the payments provided for were made to an agent of the association located in this State for the convenience of one or both of the parties, does not make that a Virginia contract which by its express terms was made a New York contract. *Ware* v. *Bankers Loan and Improvement Company, supra.*

Treating it as a contract to be performed in the State of New York, the Hustings Court did not err in holding that it was not usurious. *Building Association* v. *Ashworth,* 91 Va. 706, and cases cited above.

We will now consider the appellant's assignment of error.

The amount to which the appellee was entitled as a credit on his indebtedness to the association on account of his certificates of stock must be determined by the terms of his contract. Being, as we have seen, a New York contract and to be construed and governed by the laws of that State, we cannot do better than quote from the opinion of the Supreme Court of that State, in the case of *O'Malley* v. *Appellant,* reported in 92 Hun. 572, where a contract of subscription similar to the one involved in this case was construed. In that case the shareholder had subscribed for five shares of stock of Class A, and had in all respects complied with the rules and regulations of

the association.  At the expiration of five years from the date of his certificate, the time when, according to its face, it was payable, he presented it to the association and demanded the sum of $500, its face or par value.  The association declined to pay that sum for the alleged reason that the shares had not earned that amount, but stated that the amount that they had earned was $371.00, which it offered to pay upon the surrender of the certificate.  This the shareholder declined, and brought suit.  The trial court construed the certificate to be an absolute, unconditional promise to pay $500 (the par value of the certificate) at the expiration of five years from its date, and gave judgment for that sum.  From that judgment the association appealed.  The appellate court in passing upon the correctness of that judgment, said :  " The main question presented by the appeal as stated, is whether the plaintiff is entitled to recover the face value of the certificate, or whether his recovery should be limited to the amount the shares had earned.

" If the language of the certificate alone is considered, there can be but little doubt that the decision of the trial court was right.

" In construing this contract the defendant's articles of association and by-laws must be considered as part of the contract, and be given their proper effect.  *Gibbs* v. *Long Island Bank*, 83 Hun. 92 ; *Matter of Commissioners of Washington Park*, 52 N. Y. 131.  It is reasonably certain that if the construction contended for by the plaintiff is to prevail, it will thwart the scheme and purpose of the association, and probably bankrupt it.  The plan of the organization contemplates that holders of certificates shall be entitled to share equally in its earnings. It is a mutual association.  It cannot with propriety be claimed that under the defendant's articles of association and by-laws it was contemplated that there should be any distinction in the time of the maturity of the shares of stock.

" The officers of the defendant association, however, assumed

to issue to the plaintiff a certificate which, upon its face, states that the association, at the end of five years, will pay the holder thereof the sum of $100 a share.

" Plaintiff's payments were thirteen dollars a year on each share of stock, amounting upon his five shares to sixty-five dollars a year, and in five years to the sum of $325. Interest computed at six *per cent. per annum* on the payments from the time they were respectively made until the end of five years, amounts to between forty-five and forty-six dollars, which, added to the payments, make $371, the amount which the defendant claimed the shares had earned, and which it offered to pay. If the plaintiff is entitled to recover the $500, his investment earned from twenty-two to twenty-three *per cent. per annum*—an amount of interest which if paid upon all the certificates issued by the defendant would, in all probability, bankrupt the association, a result which it would seem must have been apparent to the parties when the transaction took place.

" The plaintiff was presumably aware of the general plan of the association, for it was stated in his certificate that the articles of association and the by-laws were to form a part of the contract, and, as stated, the general plan of the association contemplated that all the shareholders should be entitled to a *pro rata* share of its earnings. He must have been aware that it was not at all probable that the earnings of the association would be sufficient to pay the rate of interest which his construction of the contract calls for. It was not possible to know at the time the certificate was issued to the plaintiff when it would mature by the accumulation of dividends, for that necessarily depended upon the earnings of the association, and they could not be determined in advance.

" The dues, fees, and penalties paid by the shareholders, with the interest and premiums paid by the borrowing members, make up and constitute the income of the association, and provide the fund from which the dividends upon the stock

are paid. *People ex rel. Fairchild* v. *Preston,* 140 N. Y. 549. The dividends can only be paid out of the earnings. (Sec. 7 of chap. 122 of the Laws of 1851, as amended by chap. 564, Laws of 1875.) If the five-year clause be construed as an estimated time for the maturity of the certificate, then the certificate conforms to the general scheme of the organization, and to the statutes.

" The authority to issue a certicate with a fixed period of maturity is not expressly given either by the statute, or by the articles of association or by-laws of the association. We are of opinion that the defendant did not possess the power or authority to issue a certificate specifying a fixed maturity period, and that the clause in the certificate in question should be construed as an estimated period of maturity. The amount actually earned by the certificate at the time it was presented by the plaintiff for payment was only $371."

From that decision it is clear that, even if the appellee in this case had complied with all the rules and regulations of the association, and fully kept his contract during the entire ninety-six months, in which it was estimated that his certificate of stock would mature, and had then demanded payment, he would only have been entitled to receive what his stock had earned, unless it had then matured. The fact that he was also a borrowing member cannot render his stock more valuable. Where he refuses or fails to comply with the terms of his contract of subscription or of borrowing, and, before the maturity of his stock, asks to have its value credited upon his indebtedness to the association (to which the association assents), he is only entitled to be credited with a sum equal to the value, or the amount standing to the credit, of his certificates on the books of the association. That value, as shown by the evidence, was $1,107.95, and was arrived at by adding together all monthly instalments paid, on each certificate of stock, to the loan fund prior to January, 1896, and all dividends declared thereon prior to that time. From this sum

was deducted 23 per cent. for losses of the association, as directed by the shareholders at their annual meeting in January, 1896. To the sum remaining after this deduction was made, there were added the monthly instalments paid on the certificates of stock to the loan fund after January, 1896. The sum of $1,107.95, under the evidence in the case, must therefore be considered the amount which the appellee is entitled to have credited upon his indebtedness to the association.

At that time the indebtedness of the appellee amounted to the sum of $2,695.66. Deducting the value of the shares from the amount due from the appellee, and it leaves due the appellant as of May 1, 1897, the sum of $1,587.71, instead of $802.51, as determined by the court.

The decree complained of must therefore be reversed, and the cause remanded to the Hustings Court, with direction to enter such decree as is proper, and in accordance with the views expressed in this opinion.

*Reversed.*