## Richmond.

EASTERN BUILDING AND LOAN ASSOCIATION v. SNYDER & OTHERS

NOVEMBER 22, 1900.

Absent, Phlegar, J.*

1. BUILDING ASSOCIATIONS—*Withdrawing Members—Right of Action.*— A solvent building association, in the absence of bad faith on its part, is not in default to, and cannot be sued by, a withdrawing member until there are funds in the treasury of the association out of which he is entitled to be paid.

2. BUILDING ASSOCIATIONS—*Power to Make By-Laws—Effect on Existing Members.*—The power to make reasonable by-laws consistent with its charter inheres in every corporation, and every one who becomes a member accepts membership with notice of this power. A corporation cannot, by a subsequent by-law, change the essential character of an antecedent agreement with a stockholder, but may pass by-laws, more or less affecting remedies of its stockholders against it; and existing members will be bound by them, so far as they are within the power conferred by the charter.

3. CONTRACTS—*Effect of Penalty—Foreign Corporations—Doing Business in State.*—Although an act of Assembly makes it a misdemeanor for any agent, officer, or employee of certain foreign corporations to do business in this State, without complying with the provisions of the act, contracts made with such corporations in violation of such act will not be declared void, but will be enforced, in the absence of any other evidence of intention on the part of the Legislature that such contracts should be void.

Appeal from two decrees of the Circuit Court of Alleghany county, pronounced March 28, 1898, and March 30, 1899, in

*This case was argued and submitted before Judge Phlegar qualified.

a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Chester M. Elliott, H. M. Garrett* and *Geo. K. Anderson,* for the appellant.

*John T. Delaney,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This was an attachment in equity brought by the appellee, a withdrawing member of the Eastern Building and Loan Association, a New York corporation, to subject its assets in this State, or so much thereof as might be necessary, to the payment of $1,345, with legal interest on $765, part thereof from March 31, 1897, and on $390, another part thereof from April 14, 1897, until paid, alleged to be due him on account of monthly payments made on thirty shares of stock held by him in the association.

Twenty shares of the stock were issued to the appellee on the 1st day of November, 1892, and the other ten shares were issued to his assignor on the same day, and by him regularly assigned to appellee March 2, 1896.

The appellee bases his right to recover upon a clause in each of the certificates held by him, which provides "that any member in good standing may withdraw *their* monthly instalments at any time by first giving thirty days' notice, and will receive six *per cent.* annual interest on all shares of six months standing and up to two years; the third year seven *per cent.,* and at any time after the third year and before maturity eight *per cent.*" The appellant, desiring to take advantage of this provision and withdraw before his stock matured, gave notice of his withdrawal of the twenty shares issued to him on the

25th day of February, 1897, and, on the 13th of the following
month, gave notice of the withdrawal of the ten shares acquired
by assignment.   The association acknowledged the receipt of
these notices and his certificates of membership, and wrote him
that they had been filed and would be paid in their regular
order, as provided by the articles of incorporation and by-laws.
On the 6th day of May following, more than thirty days after
the notices were given, the withdrawal value of the appellee's
stock not having been paid, he instituted this suit.

One ground of defence relied on by the association is that, at
the time the suit was brought, the appellee had no cause of action
against it, because, by the terms of the contract between the
appellee and the association, and the provisions of its articles of
incorporation and by-laws, and its rules and regulations, the
association is not required to pay out to withdrawing or matured
stock more than one-half of the amount received by it from
dues and stock payments in any month, and that such with-
drawals are to be paid in the order in which applications there-
for are filed; that, at the time appellee's applications were filed,
and up to the time of the institution of his suit, the amount of
withdrawing stock filed for payment prior to appellee's appli-
cations exceeded the amount of money paid to or in the treasury
of the association applicable to their payment, so that there
was not, when his applications were filed, and have not since
been, any funds in the treasury of the association applicable to
the payment of his claim.

The appellee denies that his right to recover the withdrawal
value of his shares was thus limited, or that he was not entitled
to receive the sums due him until all prior applications for
withdrawal had been paid.

The first question, therefore, to be determined, is, out of
what fund, and when, is a withdrawing member entitled to be
paid the withdrawal value of his stock?

By section 17 of the articles of incorporation it is provided

that all of its funds shall be divided into two classes, which shall be called respectively the "expense fund" and the "loan fund." After declaring what each of these funds shall consist of, it provides that "no money can be withdrawn from the 'loan fund' for any other purpose than the making of loans on security provided by the by-laws, and to pay amounts due withdrawing shareholders."

Section 2, article 11, of the by-laws, provides that: " The loan fund shall consist of all receipts which do not go into the expense fund as hereinbefore provided, together with all interests, fines, earnings, and accumulations from whatever source. No money can be drawn from the loan fund for any other purpose than the making of loans on security as provided by the by-laws, and to pay amounts due withdrawing shareholders."

Section 12 of the articles of incorporation, after providing under what circumstances, and upon what notice, shares might be withdrawn, and the amounts the holder thereof would be entitled to receive, provides: " But in no event shall the association be required to pay withdrawing members more than one-half of the net receipts of the monthly instalments paid in during the month in which the withdrawal occurred."

By section 19 of article 14 of the by-laws of the association, it is provided that "any shareholder wishing to withdraw his stock may be allowed to do so at any time, but the association shall not be required to pay more than one-half of the net receipts of the monthly instalments paid in that month to withdrawing members."

From these provisions it appears that the only fund out of which a withdrawing member was entitled to receive payment was the monthly instalments paid in during the month in which the withdrawal occurred, and the association could not be compelled to pay more than one-half of the net receipts of that sum to withdrawing members.

VOL. XCVIII—90

In the year 1894, after the appellee and his assignor had purchased their stock, or become members of the association, its by-laws were amended so as to provide that "payments shall be made in the order of the application for withdrawal, but the association shall not be required to pay out on withdrawing and matured stock more than one-half of the amount received from dues and stock payments in any month."

If this amended by-law, which was in force when the appellee gave notice of the withdrawal of his shares of stock, was binding upon him, his suit was prematurely brought, as there was no money in the treasury of the association legally applicable to the payment of his claim.

Whilst the decisions are conflicting as to the right of a withdrawing member to bring suit and recover judgment for the amount due him before funds have been collected out of which he is entitled to be paid, the doctrine in New York (and this is a New York contract), and in this State, is that a solvent building association in the absence of bad faith on its part (and no such charge is made in this case) is not in default, and cannot be sued, until there are funds in the treasury of the association out of which the withdrawing member is entitled to be paid. *Englehardt* v. *Building Ass.*, 148 N. Y. 281, 285-6; *Andrews* v. *Roanoke Building Ass.*, *ante* page 445.

It seems that prior to the 11th of January, 1897, the association paid withdrawing members what was due them upon the presentation of their stock, but after that time it ceased to do so because the amount of withdrawals greatly exceeded the income out of which they were to be paid. After that date, and before the appellee's applications for withdrawal were filed, withdrawals of stock aggregating more than $260,000 were filed, whilst the income from dues on stock applicable to the payment of withdrawals from January 11, 1897, until August 17, 1897, more than three months after this suit was instituted, was less than $45,000, and of the withdrawals on file when the

appellee filed his application, more than $130,000 remained unpaid when this suit was instituted in May, 1897.

It is earnestly insisted by the appellee that he is not bound by the amended by-law, which provides that withdrawing members shall be paid in the order in which their applications are filed, and that the association shall not be required to pay out on withdrawing stock more than one-half of the amount received from dues and stock payments received in any month.

Under the by-law in force when the appellee became a shareholder in the association, it could not be required to pay a withdrawing shareholder more than one-half of the net receipts of the monthly instalments paid in during the month in which the withdrawal occurred; whilst, under the amended by-law, it was bound to pay on withdrawing stock at least one-half of the amount received from dues and stock payments in any month, thus enlarging, instead of diminishing, the fund out of which withdrawing stockholders were to be paid. Of this provision withdrawing shareholders have no right to complain, as it benefits, instead of injures, them.

Prior to the amendment of the by-law in question, there was no provision as to the order in which withdrawing stockholders should be paid. The practice seems to have been to pay such stockholders when their applications were filed. The provision as to the order of payment intended, doubtless, to provide how they should be paid in the event the association did not have in the treasury at any time a sufficient fund applicable to such claims with which to pay all withdrawing stock. In such a contingency, the association would have to pay *pro rata* out of the fund in the treasury, out of which they were entitled to be paid, or provide some order in which they should be paid in full.

There does not seem to be any good reason why, in the case of a solvent association, there being no statute or by-law controlling the order of payment, the stockholder who first exer-

cises his right, and perfects his withdrawal, should not first be paid, when there is not sufficient funds in the treasury to pay all.

The right to make such changes as was made in the by-law under consideration has been passed upon by the courts of New York. In the case of *House* v. *Building Association* (this appellant), in the appellate division of the Supreme Court of New York, 52 Hun. 163, &c. (May term, 1900), it was said by the judge delivering the opinion of the court, that "after plaintiff purchased his stock, another by-law was passed which is urged upon my attention in this connection. It reads: ' Payments shall be made in the order of the applications for withdrawal, but the association shall not be required to pay out on withdrawing or matured stock more than one-half the amount received from dues and stock payments in any month.' I do not regard this provision as materially affecting this case. If the other provisions already quoted apply, I think the rule should be, independent of express provisions to that effect, that if the funds on hand applicable to the payment of withdrawals were insufficient to pay them all, they should be applied to payment in the order in which applications for withdrawals were made. So far as the latter part of the last provision is concerned, it is broader in plaintiff's favor as to the funds from which withdrawals may be paid than those in force when he joined the company. * * * * This was a mutual association. Plaintiff, under the terms of his application and certificate for stock, is to be charged with notice and knowledge of the provisions of the articles of association and by-laws. They both told him that the company could not be compelled to pay withdrawing members except from certain funds. These or some similar provisions were quite essential for the protection of all the members of the company. As was said by Judge Andrews in a case against a similar association: ' It was essential to the practical working of the scheme and purpose of the organization. The association, if the plan was followed, could have no

assets of any considerable amount available for immediate repayment of dues paid in by withdrawing members. It was not a money corporation in any proper sense, and would not, in the ordinary course of its business, have assets readily convertible into money. Its assets would be represented in the main by loans to members on mortgages payable in small weekly payments. If no restriction existed, preventing withdrawing members from immediately maintaining actions to recover their dues and enforcing judgments obtained, it is evident that this and similar associations would have a precarious existence. They would be in peril, at almost any moment, to have their operations arrested and thrown into a receivership by the conjoint action of a few withdrawing members. The beneficial purpose of the statute for the encouragement of small savings would be frustrated, and the assets of the association subjected to costs and expenses which would seriously impair the general fund contributed by the members.' *Englehardt* v. *Fifth Ward Loan Ass.*, 118 N. Y. 281. Being thus chargeable with knowledge of the general nature and property of the association which he was joining, and of its rules and regulations, I think it must be held that when plaintiff took from defendant its agreement to pay him upon withdrawal before maturity a certain sum, he took it subject to the qualifications as to method and manner of payment now claimed by it."

The decision of the Court of Appeals of New York in the case of *Englehardt* v. *Fifth Ward Ass.*, *supra*, relied on by the Supreme Court in the case cited, fully sustains the conclusion that the change made in its by-laws and regulations as to the order of paying withdrawing stockholders was not in violation of the appellee's rights.

In discussing the right of a building association to change its by-laws and regulations as to the manner of paying withdrawing members, Judge Andrews further said: " The power to make reasonable by-laws consistent with its charter inheres in every

corporation. Associations formed under the act of 1851" (as was the appellant company) "are declared therein to possess certain powers given to corporations by the Revised Statutes in tit. 3, ch. 18, pt. 1, among which is the power to make by-laws, not inconsistent with any existing law, for the management of its property and the regulation of its affairs, and, by the express terms of the act itself, power is conferred on associations formed under it to make such 'provisions as shall be necessary for the convenient and effective transaction of the business thereof.' The member of an association accepts membership with notice of the powers thus conferred. He is subject not only to regulations existing when he becomes a member, but to such as may be enacted from time to time by the association within the scope of the power given by statute. It may be admitted that the association could not, under this power, destroy the contract between it and the member; but the contract made was in law subject to the power of the association to enact at any time reasonable by-laws. It would not be reasonable to extend this power so as to authorize the association by a subsequent by-law to change the essential character of an antecedent agreement between a member and the association, as for example, that a withdrawing member should not be repaid his dues. But a by-law, more or less affecting the remedy of the shareholder, may be passed, and existing members will be bound by it, so far, at least, as they consented to the exercise of such a power when they became members * * * * *. We think that the by-law enacted in the present case, that withdrawing members should be paid in the order of the presentation of their application, was a reasonable regulation, and bound the plaintiff, although enacted after he became a member. There is nothing in the articles of association forbidding, directly or by implication, the enactment of such a by-law. It gave no preference to any stockholder over others. The plaintiff was at liberty, at any time, to withdraw and make his appli-

cation for repayment, but he saw fit to defer doing so until after many others had preceded him. The association, by enacting the rule, did not deny the plaintiff's right to be paid out of collections, but for convenience enacted a rule that those who first applied should be first paid, and this, we think, it was competent for the association to do, and that, when enacted, the rule was binding upon all members alike."

We have quoted thus fully from the New York cases because the contract in question was a New York contract, and must, therefore, be construed by the laws of that State. *Nat. Build., &c. Ass.* v. *Ashworth,* 91 Va. 706; *Nickles* v. *People's Build., &c. Ass.,* 93 Va. 380, 387; *Building Ass.* v. *Tinsley,* 96 Va. 322.

The conclusion reached, however, seems to be fully sustained by the better reason and the weight of authority in England and in this country. See *Rosenburg* v. *Northumberland Bldg. Soc.,* 22 Queen's Bench, Div. (L. R.), 373; *Wilson* v. *Miles Platting Bldg. Soc.,* Id. 381; *Pepe* v. *City and Suburban, &c. Bldg. Soc.,* 2 Chan. Div. (L. R.), 311; *Brett* v. *Monarch, &c. Bldg. Ass.,* 1 Q. B. 367 (1894); *Barnard* v. *Thompson,* 1 Chy. Div. (L. R.), 374; *Henibokel* v. *Nat., &c. Ass.,* 58 Minn. 340, 343; *Stillwell* v. *Peoples Bldg. Ass.* (Utah), 57 Pac. Rep. 14; *Beardon* v. *Peoples Bldg. Ass.* (Tenn.), 49 S. W. Rep. 64, 71; 7 Thomp. on Corp., secs. 8769, 8770.

It is contended that the failure of the association to file a certified copy of the amendments made to its charter or articles of incorporation in this State, as provided by statute, prevents it from relying upon such amendments in this case.

Conceding that the act approved March 5, 1890, (Acts 1889-'90, p. 170-1,) entitled "An act relating to building and loan associations not incorporated in the State" made it the duty of such an association to file with the Secretary of the Commonwealth a certified copy of the amendments to its charter and articles of incorporation made after it commenced to do business in this State, as well as its charter or articles of incorpora-

tion in force prior to that time, it does not, we think, affect the rights of the parties in this case. That act makes it a misdemeanor, punishable by a fine of one hundred dollars, for any agent, officer or employee of such an association to do business in this State without complying with the provisions of the act, but it does not declare in terms that contracts made in violation of the act shall be void, nor is there·anything in the act which shows that it was the intention of the Legislature that they should be void. In the absence of any such intention, the rule seems to be well settled that such contracts will be enforced by the courts. *Niemeyer* v. *Wright*, 75 Va. 239, and cases cited; 2 Morawitz on Corp. (2d ed.), sec. 665.

We are of opinion, therefore, that the amended by-law, in so far as it is involved in this case, was binding upon the appellee, and that the changes made by it, in the manner of paying withdrawing shareholders the amounts due them, was not in violation of their contract rights.

We are further of opinion that as there was no fund in the treasury of the association which the appellee had the right to have paid on his claim when he instituted his suit, he had no cause of action at that time.

The decrees of the Circuit Court must be reversed, and the bill dismissed, without prejudice to the appellee's rights.

*Reversed.*