# Richmond.

CAMPBELL V. EASTERN BUILDING & LOAN ASSOCIATION & OTHERS

DECEMBER 6, 1900.

1. BUILDING ASSOCIATIONS—*Fixed Period for Maturity of Stock.*—Under the laws of New York, which govern this case, a mutual building association does not possess the power to issue a certificate specifying a fixed period of maturity of its stock. Such a clause in the certificate must be construed as an estimated period of maturity, and the stockholder is only entitled to receive what his stock has actually earned.

2. BUILDING ASSOCIATIONS—*Shareholder—Fixed Period of Maturity—Borrower.*—A shareholder in a mutual building association is bound by its articles and by-laws, and, having united in a business venture for the common benefit, cannot rely upon a contract with the association that the stock is to mature in a given time, to the prejudice of the other stockholders. The fact that he is a borrowing member does not alter this relation, and he can only have credit at the time fixed for the maturity of his stock for what the stock has then earned. Neither the company, nor any of its agents, has power to guarantee that the stock will mature at a fixed period.

3. FRAUD—*Misrepresentations—Opinions—Maturity of Stock.*—A misrepresentation, the falsity of which will afford ground for an action for damages, or a bill for the rescission of a contract, must be of an existing fact, and not the mere expression of an opinion. The time within which stock will reach its par value, based on past transactions, is the mere expression of an opinion.

4. FRAUD—*Rescission—Election.*—The right to rescind a contract on the ground of fraud must be promptly exercised on discovery of the fraud, or else will be deemed to have been waived. The election to rescind or affirm may be by words or acts, but once exercised, it is final and cannot thereafter be retracted.

5. BUILDING ASSOCIATIONS—*Monthly Instalments—Uncertainty as to Maturity.*—Contracts with building associations to make monthly

payments on stock till the stock attains its par value are not void for uncertainty. Such companies have no power to make anything but indefinite contracts as to date of maturity of their stock.

Appeal from a decree of the Circuit Court of Frederick county, pronounced April 21, 1900, in a suit in chancery, wherein the appellant was the complainant, and the appellee and another were the defendants.

*Affirmed.*

The opinion states the case.

*Barton & Boyd,* for the appellant.

*Chester M. Elliott* and *William Gordon Robertson,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The appellant being the holder of fifty-eight shares of the capital stock of the Eastern Building and Loan Association, applied for and obtained from said association an advance, or loan, upon his stock of $5,800. As security for this loan, the stock was pledged as collateral, and a deed of trust given by appellant upon certain real estate. This deed secures the payment of $6,849.34, evidenced by seventy-six promissory notes of even date with the deed, each for the sum of $91.84, except the three maturing last, which are for $48.34 each, all payable to the association at its home office, in Syracuse, N. Y., and falling due, one, on the last Saturday of each succeeding month, until all are paid, being the dues on the stock and the interest and premium on the loan. The applicant paid the notes as they fell due down to, and including, that due on the last Saturday in November, 1898, when the payments ceased, leaving unpaid several of the notes. In December, 1898, the appellant instituted this suit praying that the contract be rescinded; that the defendant association be enjoined from collecting any fur-

ther sums by reason of the transaction; that it be compelled to cancel and deliver to appellant the five notes remaining unpaid; to cancel and destroy the certificates of stock; to wholly release and cancel the deed of trust, and repay to appellant the sum of $1,069.60, which represented the amount paid to the association in excess of the loan and six *per cent.* interest.

Conceding that the demurrer to the bill was properly overruled, and proceeding at once to the merits of the case, we will consider, in the order stated in the petition for appeal, the grounds therein alleged in support of appellant's right to the relief asked.

It is contended that the parties entered into a definite contract, whereby it was agreed that the entire debt should be discharged and paid off in seventy-eight monthly instalments; that if this agreement was a mistake on the part of the association, such a mistake releases the appellant and entitles him to a rescission of the contract upon repayment by him of the money which he received, with six *per cent.* interest thereon. And that, if the association is released from the agreement because it had no power to make such a contract, the appellant is also released and entitled to a restoration of the *status quo.*

It is not denied that the contract in question was a New York contract, and to be construed in accordance with the laws of that State.

We are unable to distinguish this case, in principle, from the case of *Building Association* v. *Tinsley*, 96 Va. 322. In that case, the loan was for a definite fixed period of eight years, the borrower undertaking to pay the interest and premiums thereon in monthly instalments. This he did for more than four years, when he ceased paying, and brought suit, seeking to be released from his contract upon the ground that the loan was usurious. Following the decision of the Supreme Court of New York in the case of *O'Malley* v. *Building Association,* we held that the association did not possess the power to issue a certificate

specifying a fixed period for the maturity of its stock, and that such a clause in the certificate should be construed as an estimated period of maturity; that if the borrowing member had complied with all the rules and regulations of the association, and fully kept his contract during the entire eight years, in which it was estimated that his stock would mature, and had then demanded settlement, he would only have been entitled to receive what his stock had then earned.

The terms and conditions expressed in the certificate of stock, in connection with the application for membership and the by-laws of the association, form the contract between the association and each shareholder therein. The deed of trust given by appellant expressly states that the loan in question was made pursuant to and accepted under the provisions of the by-laws, which were thereby made a part of the contract, and appellant further covenanted and agreed therein that he would keep and perform all promises and engagements made and entered into with the association, according to the true intent and meaning of its by-laws and articles of incorporation.

The contention of appellant throughout is based upon the theory that he is an ordinary borrower of money, ignoring the fact that he is a member of a mutual association, into which he has voluntarily entered, and bound by its articles and by-laws, which constitute part of his contract, and must therefore be given their proper effect in construing that contract. The members of the association have united together in a business venture for the common benefit. It is a mutual association, and equality of right according to the interest of each member is the fundamental idea upon which it rests. The definite contract was made, doubtless, in good faith by both parties, but appellant had no legal right to rely upon such a consummation. He was taking chances with his fellow-shareholders that the earnings would be sufficient, in the time specified, to declare, not his alone, but all the stock matured. At the end of the

seventy-eight months, if the stock had not matured, each share-holder could receive what his stock had then earned, or he could go on paying until it did mature. Appellant occupied no better or different position, as a borrower, than the mere holder of stock. He remained a member of the association, the money advanced being upon his stock at its maturity or par value. He had fifty-eight shares, and was advanced $5,800. It was never contemplated that he should return the $5,800, but it was the intention and purpose of the contract that he should continue to pay the dues on his shares and the interest and premium on the advance until his stock was matured, which would cancel the $5,800.

If the contention of the appellant should prevail, it would be at the expense of his fellow-stockholders, and if each stock-holder should demand settlement upon a like basis, it would thwart the scheme and purposes of the association.

It is further contended that appellant is entitled to a rescission of his contract upon the ground that he was induced to become a purchaser of the stock, as a basis of the loan, or advance subsequently secured, by fraudulent misrepresentations made by the agents of the association as to the time when the stock would mature; that but for such representations of material existing facts, he would not have purchased the stock.

As we have already seen, the association itself had no power to guarantee that the stock would be matured in a fixed time, and therefore its agents could not, if they had attempted to do so, bind it by such representations or guarantees. And, further, the agents had no power or authority to bind the association by the statements or representations relied on, for the reason that the certificate of stock, the terms of which appellant must be presumed to have known, as well as the by-laws and the printed literature, which was in the hands of appellant, all expressly provided that no agent had authority to change the contract in any way, and that the association assumed no obli-

gation for any statements not contained in its printed literature.

A misrepresentation, the falsity of which will afford a ground of action for damages, or a bill for the rescission of a contract, must be as to an existing fact. It must be an affirmative statement of some fact, in contradistinction to a mere expression of opinion, which is ordinarily not presumed to deceive or mislead. *Watkins* v. *Wytheville, &c. Co.*, 92 Va. 1; *Max Meadows, &c. Co.* v. *Brady*, Id. 71. So far as the representations made in the printed literature are concerned, for reasons already stated, these are not sufficient to entitle appellant to rescind the contract. As to the representations touching the business of the company, they were merely to the effect that judging from its success in the past (it had only been in business a few months), the business would continue to grow to such an extent that the association would be able to fulfill its promise to close up the contract within seventy-eight months. There was no representation of a definite rate of earning made by the company upon which any calculation could be made to test the accuracy of this statement. It was the opinion of the agent, based upon business contingencies running far into the future, that the end desired by all would be realized. They were not affirmative statements of an existing fact such as the law requires to entitle appellant to the relief asked.

Apart, however, from these considerations, it is too well settled to need citation of authority, that where a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud; for, if after the discovery of the fraud, he treats the contract as a subsisting contract, he will be deemed to have waived his right of repudiation, and must then bring an action for damages for the deceit. And whenever a party to a contract has a right to elect whether he will avoid it or treat it as a subsisting contract, his election may be manifested by acts as well as by words, and, when once made,

is final and cannot be retracted. *Max Meadows, &c. Co.* v. *Brady, supra.* It appears from the record that, in March, 1898, appellant was informed by an agent of the company that the stock would not be matured in the time specified, and that twenty-eight more monthly instalments would be required; and shortly thereafter, received from the company its annual report giving him the same information; whereupon, he wrote to the company for a statement of what he owed under his contract, and received in reply a statement showing his indebtedness based upon the additional monthly payments necessary to mature the stock. Notwithstanding all this clear and authoritative information on the subject, he took no action, but continued to pay his monthly instalments until the following November, thus making nine several payments after full knowledge of the facts now relied on as ground for rescission. This was a ratification of the right to demand the additional instalments that disentitles appellant to the relief now sought. He says he continued to make the payments because he thought that, in any event, he would have to perform the obligation into which he had entered; and yet in his bill he asks that $1,069.60, a sum more than sufficient to cover the payments thus made, be refunded to him.

The final contention of appellant is that, if he was under an obligation to continue his payments beyond the seventy-six notes given by him for dues, premium and interest, then the contract is an indefinite one and void for uncertainty. This position has been sufficiently answered by what has been already said. The company had no power to make anything but an indefinite contract, so far as the time when its stock would mature was concerned. To hold the contract invalid for this reason, would be to hold that all subscriptions to the stock of a building association, when the time for the maturity of the stock was not certain and fixed, were invalid, whereas the con-

trary is the settled law governing in the construction of such contracts.

The learned counsel for appellant has commented in strong terms upon the harshness of the contract in question. So long, however, as such associations are permitted to do business in the State, and persons are found willing to embark in the enterprise by becoming shareholders therein, the courts have no alternative but to enforce the contracts they are authorized to make.

For these reasons the decree appealed from is affirmed.

*Affirmed.*