# Richmond.

## COLIN v. WELLFORD.

### MARCH 17, 1904.

1. BUILDING ASSOCIATION—*Insolvency—Rights of Withdrawing Members—Compromise.*—A withdrawing member of a building association which was in fact insolvent at the time the notice of withdrawal was given, though the insolvency was not notorious and no steps had been taken to wind up its affairs, is not a creditor, and is only entitled to his *pro rata* share of the assets along with the other stockholders of the association, and it is immaterial that he has compromised with the officers of the association, and taken its notes for a less sum than would be the withdrawal value of his stock if the association were a going concern. When insolvency exists as a fact the right of the stockholders to equality in the distribution of the assets of the association attaches, and cannot be defeated by a notice of withdrawal, nor by any dealing between the member and the officers of the association which falls short of actual payment. "Insolvency," as here used, means inability of the association to satisfy the demands of its own members.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced in a suit in chancery therein pending under the style of *Wellford for etc.* v. *United Banking and Trust Co.,* in which the appellant was, on his petition, admitted as a party complainant, and the object of which was to wind up the affairs of the defendant company, which was charged to be unable to pay its stockholders in full.

*Affirmed.*

The opinion states the case.

*Legh R. Page,* for the appellant.

*B. Rand. Wellford,* for the appellee.

KEITH, P., delivered the opinion of the court.

The record in this case discloses the following state of facts: The appellant was the owner of certain certificates of instalment and prepaid stock in the United Banking and Trust Company, and, in the exercise of his right under the charter and by-laws of the company, on the 25th of January, 1901, he gave written notice of the withdrawal of his certificates of stock, which notice was duly served on the company, and accepted by it as sufficient and regular in every respect. On the 28th of March, 1891, 60 days (the period required under the by-laws) having expired, he made demand upon the company for the sum due him, and was promised payment at an early day. The promise was not kept. He was put off from time to time, and on or about the 22nd of May, 1901, was informed that the board of directors rejected his demand for the payment of his claim in full, and offered $4,605.75 in compromise and settlement, to be paid in thirteen monthly instalments, bearing interest at the rate of three *per cent. per annum.* This proportion was accepted by appellant, and upon the receipt of the obligations of the company, as provided by the settlement, he surrendered his certificates of stock, which were marked "cancelled and withdrawn," and appellant's name was stricken from the books of the company as a shareholder. The first of the thirteen monthly instalments was paid at maturity, but before the second became due a bill was filed to wind up the affairs of the company, and on the same day receivers were appointed, who refused further payment to appellant.

In July, 1902, appellant filed his petition, asking to be placed upon the footing of a creditor of the company for the amount of

the twelve matured and unpaid obligations above referred to, and the matter was referred to a commissioner, who reported adversely to appellant's claim. The exceptions to that report were overruled by the court, a decree was entered denying the prayer of petitioner, and the case is before us for review.

The report of the commissioner proceeds upon the theory that the company was insolvent at the date of the notice of withdrawal, and the opinion of the learned chancellor is to the same effect. There is a strong presumption in favor of the correctness of this finding of fact on the part of the commissioner, thus approved by the court, and there is nothing in the record to lead us to a contrary conclusion. We shall, therefore, proceed with the consideration of the case, taking the insolvency of the company, at least as early as January, 1901, as a fact established. The term "insolvency," as here used, has no reference to outside creditors, for there are none, but to the inability of the company to satisfy the demands of its own members.

We have had no adjudication in this State upon the precise question here involved.

In *Andrews* v. *Building Association,* 98 Va. 445, 36 S. E. 531, 49 L. R. A. 659, we held that a withdrawing member of a building association does not lose all of his rights and interests as such in the association. Though he is not, strictly speaking, a creditor of the association, he can maintain no suit to recover the withdrawal value of his stock until a fund for its payment has been provided, and until then the act of limitation does not begin to run against his demand. On the other hand, it is the duty of the association to provide such a fund, in accordance with its charter and by-laws, and in default thereof the member may ask the appointment of a receiver, and, it may be, a winding up of the affairs of the association.

In *Eastern Building & Loan Ass'n* v. *Snyder,* 98 Va. 710, 37 S. E. 298, it was held that a solvent building association, in the absence of bad faith on its part, is not in default, and cannot

be sued by a withdrawing member, until there are funds in the treasury of the association out of which he is entitled to be paid.

We are in this case called upon to define the rights of a withdrawing member of a building association which was insolvent at the time notice of withdrawal was given, though no legal steps had been taken to wind up its affairs, and whose insolvency, though in fact existing, was not then notorious.

As shown in *Andrews* v. *Building Association, supra,* the tendency of the English courts, while recognizing that withdrawing members are not creditors of the association in the ordinary sense of the word, has been to allow them a preference over those who have given no withdrawal notice.     *Sibun* v. *Pearce,* L. R. 44 Ch. Div. 354.

It was held, however, in *Re Sunderland,* Queen's Bench Div., 24 L. R. 394, that the rule of the company provided only for withdrawal from the societies while they were, or were believed to be, solvent, and that, therefore, notices of withdrawal which were given or which matured at a time when the societies were known to be insolvent, though before the actual date of the winding-up order in each case, did not entitle the shareholders who had given them to be paid the amount of their subscriptions in priority to other shareholders in the winding-up.

The strong preponderance of the authorities in this country, where insolvency exists, seems to be in accord with the decision of the Supreme Court of Pennsylvania in *Christian's Appeal,* 102 Pa. 184. The court said: "While, in a qualified sense, withdrawing stockholders may be considered creditors of the association, their rights, as against those with whom they have been associated, are very different from those of general creditors, whose claims are based wholly on outside transactions. If the association has been prosperous, they have a right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund; but if bad investments have been made, or losses have been sustained, before

actual withdrawal, they must bear their just proportion thereof.
.   .   .   But the right of withdrawal, and the extent to which
it may be exercised, presupposes that at least a relative propor-
tion of the assets will remain for the benefit of those who con-
tinue to be active members of the association.

"When a building association has failed to fulfill the object
of its creation, and has become hopelessly insolvent, it cannot
be justly or equitably wound up on any other principle than that
above suggested.   After expenses incident to the administration
of its assets are deducted, the general creditors, if any, should
be first paid in full, and the residue of the fund should be dis-
tributed *pro rata* among those whose claims are based upon stock
of the association, whether they have withdrawn, and hold or-
ders for the withdrawal value thereof, or not.   Both classes are
equally meritorious, and in marshaling the assets neither is en-
titled to priority over the other.   The claims of each are alike
based upon their relation to the association as members thereof;
.   .   .   and while it may be true that a stockholder may re-
cover judgment against the corporation, and thus become, in a
certain sense, a creditor thereof, he is nevertheless not a creditor
within the meaning of our assignment laws."     .

The doctrine of *Christian's Appeal* has been quite generally
accepted by courts and text-writers.   *Chapman* v. *Young,* 65
Ill. App. 131; *Gibson* v. *Safety Homestead Ass'n,* 170 Ill. 46,
48 N. E. 580, 39 L. R. A. 202; *Heinbokel* v. *National Savings
Ass'n,* 58 Minn. 340, 59 N. W. 1050, 25 L. R. A. 215, 49 Am.
St. Rep. 519; *Hohenshell* v. *Loan Ass'n,* 140 Mo. 566, 41 S.
W. 948; *Rabbitt* v. *Wilcoxen,* 103 Iowa, 35, 72 N. W. 306, 38
L. R. A. 183, 64 Am. St. Rep. 152.

The text-writers are of a like opinion.

Endlich on Building Associations (2d Ed.) sec. 108, says:

"The right of withdrawal, however, exists and may be ex-
ercised only while the association is a going concern, or the
series to which the stock belongs running.   It cannot be exer-

cised when the stock has reached par, and the association or se-
ries exists only for the purpose of liquidation. Nor, as has
been settled in England, can it be exercised where the association
is, at the time, known to be insolvent. The provisions for with-
drawal are not intended to apply to the latter, any more than
to the former case. 'It would be altogether unreasonable to sup-
pose that it was intended, in the event of insolvency, to permit
one set of members to escape from liability at the expense of the
others. . . . The rule (as to withdrawals) seems . .
. not to contemplate any such contingency as a suspension of
its business, and therefore only to provide for a withdrawal
from the society while it was, or was believed to be, still sol-
vent.' That this doctrine is correct, as far as it goes, is self-
evident. But there is no reason why it should not go a step
further by omitting the qualification introduced by reference to
the notoriety of the fact of insolvency. Apart from the con-
sideration that one who knows the association to be insolvent is
guilty of bad faith towards his fellow members when he attempts
to get himself paid at their cost, there is every bit as much rea-
son why an actual state of insolvency, though unknown at the
date of the giving of a withdrawal notice should prevent it from
becoming effectual. The payment of the claims in the one case,
as in the other, would give an unfair advantage to the withdraw-
ing, and entail an undue injury upon the remaining, members.
Accordingly, it has been decided in Pennsylvania that the fact
of insolvency of an association negatives the right of any one to
obtain a priority over his fellows by giving notice of withdrawal.
'The right of withdrawal presupposes that at least a relative
proportion of the assets will remain for the benefit of those
who continue to be active members of the association.' Whilst,
therefore, it has been held that members who had given notice
to withdraw, and whose notices had matured before the society's
insolvency was manifest or declared, were entitled to stand upon
their rights as withdrawing members, even to the detriment of

those who had not withdrawn or whose notices had not matured, the better and more logical doctrine would seem to be that the existence of a state of insolvency at the time of the giving of the withdrawal notice, ascertained at any time before actual payment of the claims, renders the notice abortive, and destroys the right to withdraw, or to claim any benefit under the notice already given.   This principle does not, of course, invalidate settlements already made in good faith with withdrawing members who have been paid out, nor subject the right of withdrawing members to claim payment, in accordance with the provisions relating to withdrawals, to jeopardy by reason of causes of insolvency arising after notice of withdrawal." Thompson on Building Associations (2d Ed.), p. 289.

It seems, indeed, to be the accepted American doctrine that, when an association is in fact insolvent, a withdrawing member has only the right to a *pro rata* share in the distribution of its assets.   Nor is the situation affected by any assurance given by the officers of the association to the withdrawing member as to the solvency of the society at the date of the notice.   The authorities cited establish the principle that, when insolvency exists as a fact, the right of the shareholders to equality in the distribution of the assets attaches, and constitutes a paramount equity in their favor.   The fact of insolvency being established, and the right to equality of distribution having attached, it cannot be defeated by a notice of withdrawal upon the part of a member, nor by any dealing between him and the officers of the association which falls short of actual payment.

In *Rickert* v. *Suddard*, 80 Ill. App. 204, it was held that "where a member gives notice of his withdrawal, and is paid by a check upon the funds of the association in bank, but before such check is presented for payment the funds of the association are withdrawn and the association itself becomes insolvent, the rights of the holder of the check are to be determined by the solvency of the association at the time that the check was given,"

and that the insolvency of the association was a question of fact to be determined in the same way as similar questions of fact arising in other causes.

In the *Columbus Building Association* v. *Kriete,* 192 Ill. 128, 61 N. E. 510, the withdrawing stockholder had reduced his claim to a judgment, but the court held that this gave him no priority over other stockholders.

Appellant had perfected his notice to withdraw, and, if the association could be treated as a going concern, he should have been paid the full withdrawal value of his certificates. The association declining to pay him in full, he suffered an abatement, and now claims to be entitled to relief by virtue of a compromise entered into between him and his debtor. The principle of equality, as established by the authorities cited, would in any event be fatal to this contention. The principle of equality which defeats the appellant, were he standing alone upon his notice of withdrawal, is sufficient to repel the equity which he asserts, and sufficient to defeat his right to recover by virtue of his so-called compromise, for it strikes at the root of the power of the officers of an insolvent association to create any preference among stockholders in the distribution of its assets. A view of the case may well be taken in which the willingness to compromise may be construed as tending to impair rather than strengthen the position of appellant. The knowledge that there were many other stockholders in like case with himself who had, in advance of action upon his part, given notice of withdrawal, and whose demands had not been satisfied; the fact that there was no money in the treasury of the association which could properly be appropriated in payment of withdrawal claims, and that he was ready to accept in satisfaction of his demand a material abatement of its amount, not to be paid in cash, but in promises to pay in instalments distributed over a period of thirteen months, is persuasive that appellant was aware of the financial condition of the association. As was well said by the

learned chancellor in his opinion: "It must have been manifest to Colin, in taking the notes, that there were no funds on hand properly applicable to the discharge of his claim, for the by-laws (of the association), with which Colin must be presumed to have been acquainted, plainly contemplated that these withdrawals should be settled by cash payments made out of funds already in hand, derived from fixed sources, and would not be settled by notes. The very manner in which the notes were made out called attention to the irregularity of the settlement. Colin has obtained an apparent advantage which the principle of mutuality applicable to the distribution of the assets of an insolvent company of this kind does not permit him to hold. These associations partake of the nature of partnerships, and no member can take any advantage of his fellows not clearly legal. The settlement made is not so far executed as to be beyond recall, and Colin can be remitted to his position as stockholder without any injustice to him."

We are of opinion that the decree appealed from should be affirmed.

*Affirmed.*