## GAMMON v. HOWARD W. SCOTT, Inc.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

### No. 2554.

1. **Corporations ⚖⇒661 (2)—New York corporation not qualified for business in Virginia, may sue on Virginia contract after discontinuing work and withdrawing to own domicile (Code Va. 1919, §§ 3847, 3848).**

New York corporation, which had failed to qualify to do business in Virginia in accordance with Code Va. 1919, §§ 3847, 3848, held entitled to bring action on contract after discontinuing its work within state and withdrawing to its own domicile.

2. **Courts ⚖⇒259—State cannot limit nonresident's right to sue in federal courts.**

Right of nonresident citizens to sue in federal courts cannot be limited or prescribed by the state.

3. **Evidence ⚖⇒397 (1)—Oral evidence, changing meaning of written contract, held properly rejected.**

Oral testimony, effect of which would necessarily tend to change meaning of written contract, held properly rejected.

In Error to' the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action by Howard W. Scott, Incorporated, against A. S. J. Gammon. Judgment for plaintiff, and defendant brings error. Affirmed.

Luther B. Way, of Norfolk, Va. (Pender, Way & Foreman, of Norfolk, Va., on the brief), for plaintiff in error.

Tazewell Taylor, of Norfolk, Va., for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and McCLINTIC, District Judge.

WADDILL, Circuit Judge. Plaintiff in error was defendant and defendant in error was plaintiff in the District Court, and will be so styled herein.

This is an action of assumpsit, brought to recover an indebtedness alleged to be due by plaintiff to the defendant of $5,743.91 on account stated between the parties, growing out of a contract between them for the development and sale of 30 acres of land on Indian river, in Norfolk county, Va., adjacent to the Ford plant, and known as the Ford Annex. Under the contract, the defendant employed plaintiff as auctioneer to sell the property at auction, and take charge of the advertising, publicity, and promotion work in connection therewith, and to conduct the sale under the terms and conditions

specified in the contract. The plaintiff, as auctioneer, undertook to physically prepare the property for sale, by turnpiking and putting in roads, erecting white rail fences showing the property lines, with lot numbers on each lot, and street signs at each corner, and agreed to expend in connection therewith not exceeding $6,000. Plaintiff was to receive for his services 10 per cent. of the gross prices at which the property was struck out, and in addition $15 for each lot sold, the usual auctioneer's knockdown fee. The sale was to take place on the premises in July, 1925, and plaintiff was authorized to retain one-half of the 10 per cent. deposit payment on account of sales made, the balance of his commission to be paid in 30 days, and on the last-named date plaintiff was also to receive the advances made by it for the development. The agreement provided further that the property might be sold on terms of 10 per cent. cash, 10 per cent. in 30 days, and the remaining 80 per cent. in installments of 2 per cent. each month, together with interest and taxes until the full amount was paid. On the 25th of July, 1925, the date of the sale of the property, after 88 of the 400 lots had been sold, the defendant directed the discontinuance of the sale, which was done against the advice of the plaintiff, and the purpose of the suit is to recover the amount claimed by the plaintiff to be due to it as the result thereof.

Upon issue being joined between the parties, a jury was impaneled, and the District Judge at the conclusion of all the testimony, directed a verdict in favor of the plaintiff for $4,274.90, with interest, and entered judgment for that amount. The correctness of this action, together with the court's rulings upon the pleadings, and the rejection of testimony, constitutes the basis of this writ of error.

The assignments of error raise only three questions for consideration by this court, viz.: The action of the District Court in directing a verdict for the plaintiff; for rejecting a plea offered by the defendant challenging the right of the plaintiff to recover because of its failure to qualify itself to sue in the courts of Virginia; and its ruling denying an effort on defendant's part to introduce parol testimony to vary the written contract between the parties. These assignments will be taken up in the order named.

First. The court's direction of a verdict in favor of the plaintiff. A careful examination of the testimony in the case will show that plaintiff was clearly entitled to recover, and that the amount specified by the court was substantially assented to. There was no dispute as to the amount due plaintiff, nor any serious question as to the advances made by it in the development of the property. The differences between the parties grew out of mere matters of detail, arising largely as to just what had been expended.

Second. The defendant challenged the right of the plaintiff, a corporation of the state of New York, to sue in the courts of Virginia, owing to its failure to domesticate itself as required by statute of the state, set forth in sections 3847 and 3848 of the Code of Virginia of 1919, and acts amendatory thereof. The defendant averred that the subject-matter of the controversy was entirely one affecting intrastate business, and in no manner related to interstate commerce, and that the same was entered into contrary to and in violation of the statutes, and that, because of the failure of plaintiff thus to qualify itself to do business in Virginia, the contract entered into was void, and no recovery could be had thereunder. There is no dispute in the testimony that the plaintiff, a New York corporation, did not qualify to do business in accordance with the Virginia statute referred to, nor is there any denial of the fact that, upon the alleged breach of the contract sued on, plaintiff discontinued its work in the state, and withdrew to and continued its business at its home domicile.

[1] The correctness of the court's ruling excepted to depends entirely upon the interpretation to be placed upon the two sections of the Virginia Code cited, in the light of the amendment of 1910, authorizing suits on contracts entered into by undomesticated corporations after they have removed from the state. These two sections with much detail and elaboration lay down what a nonresident corporation is required to do to enable it to conduct business in this state, and the consequences of failure to comply with the law. But upon a careful analysis of them it will be found that much of which is required, relates to matters of form, and nowhere is there a suggestion that the failure to comply with the provisions of the act shall work a forfeiture of the rights of the parties, or that contracts entered into in relation to the same, shall be void. Briefly, section 3847 provides (1) for the establishment of an office in the state by the nonresident corporation; (2) execution of a power of attorney to the secretary of the commonwealth, on whom process shall be served, with official authority for him to appear in behalf of the corporation, the power of at-

torney to be presented and filed in duplicate with the state Corporation Commission; (3) certificates from the auditor of public accounts, showing payment of fees required by law and authority to do business, and that the statutory taxes have been paid. Section 3848 provides what shall be the effect of the failure to comply with the previous section, viz.: (1) A fine of not less than $10 nor more than $1,000; (2) personal liability by officers and agents of the nonresident company to the state for fines or other claims against the corporation in favor of residents of this state; and (3) that the corporation is inhibited from recovering money or property or from enforcing contracts within the state without procuring the certificates required by the statute.

To accept plaintiff's contention as to the meaning and effect of the provisions of the two sections of the Code referred to would be to place upon them an interpretation wholly inconsistent with their purpose and intent, and to give to the penalties prescribed a meaning utterly at variance with the entire weight of authority bearing thereon. The Legislature apparently took pains not to do the very thing now sought to be attributed to it. The imposition against a corporation for the inhibited act of statutory penalties and fines, or claims against officers or agents of the corporation for violating the same, does not affect nor invalidate a contract growing out of such violations. The state and federal authorities strongly sustain this view. Middleton, Farr, etc., v. Arnold, 13 Grat. (Va.) 489; Niemeyer v. Wright, 75 Va. 239, 40 Am. Rep. 720; Eastern Building & Loan Association v. Snyder, 98 Va. 710, 37 S. E. 298; Tie Co. v. Thomas, 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925; Wetzel Railway Co. v. Tennis Bros. Co. (C. C. A. 4th Cir.) 145 F. 463; Johnson v. New York Breweries Co., 101 C. C. A. 639, 178 F. 513; Harris v. Runnels, 12 How. 79, 13 L. Ed. 901; Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317; David Lupton's Sons Co. v. Automobile Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699. In Eastern Building & L. Association v. Snyder, 98 Va. 710, supra, at pages 719 and 720, 37 S. E. 298, 301, the court said:

"Conceding that the act approved March 5, 1890, (Acts 1889–90, pp. 170, 171), entitled 'An act relating to building and loan associations not incorporated in the state,' made it the duty of such an association to file with the secretary of the commonwealth a certified copy of the amendments to its charter and articles of incorporation made after it commenced to do business in this state, as well as its charter or articles of incorporation in force prior to that time, it does not, we think, affect the rights of the parties in this case. That act makes it a misdemeanor, punishable by a fine of one hundred dollars, for any agent, officer, or employee of such an association to do business in this state without complying with the provisions of the act, but it does not declare in terms that contracts made in violation of the act shall be void, nor is there anything in the act which shows that it was the intention of the Legislature that they should be void. In the absence of any such intention, the rule seems to be well settled that such contracts will be enforced by the courts. Niemeyer v. Wright, 75 Va. 239 [40 Am. Rep. 720], and cases cited; 2 Morawetz on Corp. (2d Ed.) § 665."

At the time of the Virginia decisions cited, the amendment of the act of 1910, now embodied in section 3848 of the Code, under consideration, had not been enacted. This amendment is as follows:

"No such foreign corporation shall recover any money or property or enforce any contract in any court without first obtaining the certificate of authority to do business in this state provided for in the preceding section, nor until all taxes, fees and charges due to the state have been fully paid: *Provided, that nothing contained in this act shall prevent any corporation, after having withdrawn from the state, from enforcing a contract legally made while said company was acting under a certificate of authority from the state Corporation Commission as provided in this act.*"

[2] Plaintiff insists that the effect, as well as the purpose of the amendment was to avoid contracts as to foreign corporations of the character in question. We cannot accept this view. On the contrary it was intended to enlarge and not prescribe the rights of nonresident corporations, enabling them, if need be, to sue although they had withdrawn from the state, evidenced by the italicized portion of the amendment. Manifestly it was not the purpose in specifically providing for suits by foreign corporations after they had left the state, to thereby invalidate contracts upon which suits could be instituted. Contracts of the kind were not new, and to enforce the same, including the right to sue thereon by nonresident citizens and litigants in the federal courts, plainly exists, and this right to sue in the federal

courts cannot be limited or prescribed by the state.

In Harris v. Runnels, 12 How. 79, 84 (13 L. Ed. 901) supra, the Supreme Court said:

"It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes *unlawful*, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it."

In Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317, involving the failure of a foreign corporation to domesticate itself under the laws of Colorado, and in which the penalty inflicted was much like that prescribed in Virginia, the Supreme Court gave much attention to this entire subject, and at page 289 (10 S. Ct. 95) said:

"So far as we are aware, the only penalty imposed by the statutes of Colorado upon a foreign corporation carrying on business in the state before acquiring the right to do so, is found in section 262 of the same chapter, which provides: 'A failure to comply with the provisions of sections 23 and 24 (sections 260 and 261) of this act shall render each and every officer, agent and stockholder of any such corporation, so failing therein, jointly and severally personally liable on any and all contracts of such company made within this state during the time that such corporation is so in default.' The fair implication is that, in the judgment of the Legislature of Colorado, this penalty was ample to effect the object of the statutes prescribing the terms upon which foreign corporations might do business in that state. It is not for the judiciary, at the instance or for the benefit of private parties, claiming under deeds executed by the person who had previously conveyed to the corporation, according to the forms prescribed for passing title to real estate, to inflict the additional and harsh penalty of forfeiting, for the benefit of such parties, the estate thus conveyed to the corporation and by it conveyed to others."

In David Lupton's Sons v. Automobile Club of America, 225 U. S. 489, 495, 499, 500, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699, the Supreme Court considered the authorities generally on this subject, including its own opinion in Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317, supra. In the Lupton Case, supra, at page 489 (32 S. Ct. 711), the court had under consideration sections 15 and 16 of the General Corporation Law of New York, and at page 497 (32 S. Ct. 713), speaking through Mr. Justice Hughes, said:

"The only penalty which the General Corporation Law itself prescribes for a disregard of the provisions of this section is a disability to sue upon such a contract in the courts of New York. 'No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state, unless prior to the making of such contract it shall have procured such certificate.' Consol. Laws, c. 23, § 15. This prohibition would be effective to prevent the appellant from suing the respondent upon the contract alleged in the complaint; but in my opinion it is not operative to wholly invalidate the contract. I think that the penalty imposed upon a foreign stock corporation for doing business in New York without the certificate of authority required by section 15 of the General Corporation Law is limited to that thus prescribed in the section itself. No doubt the Legislature could have gone further and declared all contracts to be void which were made by a foreign stock corporation doing business in this state without having obtained the certificate; but it has not done so."

The same learned justice at pages 499 and 500 (32 S. Ct. 714) also said:

"It must follow, upon the similar construction of section 15 as it read at the time of the transaction in question, that the Lupton Company, whether or not it was doing a local business in New York, had the right to bring this suit in the federal court. The state could not prescribe the qualifications of suitors in the courts of the United States, and could not deprive of their privileges those who were entitled under the Constitution and laws of the United States to resort to the federal courts for the enforcement of a valid contract. Union Bank v. Jolly's Adm'rs, 18 How. 503, 507 [15 L. Ed. 472]; Hyde v. Stone, 20 How. 170, 175 [15 L. Ed. 874]; Cowles v. Mercer County, 7 Wall. 118, 122 [19 L. Ed. 86]; Insurance Co. v. Morse, 20 Wall. 445 [22 L. Ed. 365]; Barron v. Burnside, 121 U. S. 186 [7 S. Ct. 931, 30 L. Ed. 915]; Lawrence v. Nelson, 143 U. S. 215 [12 S. Ct. 440, 36 L. Ed. 130]; In re Tyler, 149 U. S. 164, 189 [13 S. Ct. 785, 37 L. Ed. 689]; Barrow Steamship Co. v. Kane, 170 U. S. 100, 111 [18 S. Ct. 526, 42 L. Ed. 964]. The state in the statute before us made no such attempt. The only penalty it imposed, to quote again from the Mahar Case, was a disability to sue 'in the courts of New York.' Before this decision of the state court, the

Circuit Court of Appeals for the Second Circuit reached the same conclusion as to the meaning of the statute and upheld the right of the foreign corporation to sue in the federal court. Johnson v. New York Breweries Co., 178 F. 513, 101 C. C. A. 639."

The right of the plaintiff to maintain its cause of action, and the correctness of the court's ruling rejecting the defendant's plea, seems entirely clear. The defendant's assignment of error in that respect is without merit.

[3] 3. The assignment of error covering the court's ruling in rejecting oral testimony, the effect of which necessarily tended to change the meaning of the contract sued on, is not well taken.

Affirmed, with costs to the defendant in error.

Affirmed.