## THE WAYNE INTERNATIONAL BUILDING AND LOAN ASSOCIATION *v.* SKELTON.

[No. 4,015. Filed November 22, 1901.]

BUILDING AND LOAN ASSOCIATIONS.—*Maturity of Stock.—Limitation of Number of Payments.—Mortgages.*—A building and loan association by its certificate of stock agreed upon a compliance with its by-laws, made a part of the contract, and the payment of $1 each month for sixty months, unless the stock should sooner mature, to pay the legal holder $100 for each share "whenever the monthly payments made in pursuance of this contract and an equitable apportionment of the profits shall amount to the par value of the stock." The by-laws provided that the stock should mature as "soon as the total loan fund portion of the monthly instalments, with accumulated profits shall equal, $100 per share." Plaintiff subscribed for six shares of stock, procured a loan of $600, the bond and mortgage providing that the payments of dues, interest and premium should be made "until such shares mature as provided by the by-laws of the association," made sixty monthly payments and brought suit for the satisfaction of the mortgage. Plaintiff's payments together with her proportionate share of the earnings at the time of bringing the suit amounted to $434.97. *Held,* that plaintiff was required to continue payments until the maturity of the stock.

From Boone Circuit Court; *B. S. Higgins,* Judge.

Action by Rhoda Skelton against the Wayne International Building and Loan Association for the satisfaction of a mortgage. From a judgment for plaintiff, defendant appeals. *Reversed.*

*D. W. Howe, L. A. Morgan* and *J. R. Morgan,* for appellant.

*B. F. Ratcliff, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellee.

Robinson, J.—Action by appellee to compel the satisfaction of a mortgage executed by appellee to appellant. Upon a special finding of facts the court stated a conclusion of law in appellee's favor.

February 1, 1894, appellant issued to appellee six shares of its stock, class A, of the par value of $100 each, promising, upon compliance with the by-laws (made part of the contract) and the payment of $1 each month for sixty months (unless the stock should sooner mature), to pay the legal holder of the stock $100 for each share "whenever the monthly payments made in pursuance of this contract and an equitable apportionment of the profits shall amount to the par value of the stock." The by-laws provided that this stock should be paid for in monthly instalments of $1 and should mature "as soon as the total loan fund portion of the monthly instalments with accumulated profits shall equal $100 per share." They further provided that all receipts of the association should be divided into the expense fund and the loan fund, the former consisting of membership and transfer fees and a certain amount on each share of the several classes of stock, and the latter consisting of all the receipts less the expense fund. May 21, 1894, appellee borrowed $600, executed a bond therefor and a mortgage securing the performance of the covenants of the bond. In the bond she acknowledges receipt of $600 and agrees to pay

$1 dues per share each month, fifty cents a share per month premium and six per cent. interest, "until such shares mature as provided by the by-laws of said association." The mortgage contains the same provisions as to payments and maturity of shares. On February 24, 1894, appellee paid appellant $6 on her shares; on March 17, 1894, $6, and thereafter sixty monthly payments of $12 each, the last payment being March 23, 1899. In these payments she paid, interest $180, premium $180, expense account $21, and loan fund dues on stock $351. Her portion of the earnings of the association was $83.97. The total loan fund payments made by appellee, together with her share of the accumulated profits at the commencement of the action, was $434.97.

If appellee had continued an investor she could have ceased paying dues with the payment of the sixtieth payment, but, by the terms of the certificate of stock, she would not at that time have been entitled to receive $100 on each share unless the sixty monthly payments and her portion of the earnings amounted at that time to the par value of the stock. As such investor she could pay for her stock in monthly instalments of $1 per share, and her liability was limited to sixty instalments. But this limitation does not amount to a promise of maturity at the end of the sixty payments. The certificate of stock itself and the by-laws fix the time when the stock will mature and when the association will pay $100 for each share. *Union Mut., etc., Assn. v. Aichele,* 28 Ind. App. —.

But when appellee became a borrower, she agreed, in the bond and mortgage, to "continue to pay monthly dues on the said shares of stock at the rate of $1 per month on each share as provided by the by-laws of said association, together with a premium of fifty cents per month on each share of stock, and interest on said loan at the rate of six per cent. per annum, all to be due and payable on the first, and delinquent after the twenty-fifth day of each month, until such shares mature as provided by the by-laws of said association." The

by-laws provide that the stock shall mature as soon as the total loan fund portion of the monthly instalments, with accumulated profits, shall equal $100 per share.

The by-laws of the association are referred to and made part of the certificate of stock issued to appellee, and in both the bond and mortgage the by-laws are referred to both as to the manner in which payments shall be made and the maturity of the stock. Appellee, as a member of the association, must know its by-laws, and in determining the rights and liabilities of the parties, the certificate of stock, bond and mortgage must be construed in connection with the by-laws. No claim is made that any fraud or deceit of any kind was practiced upon appellee at any time by appellant or its agents.

By the terms of the by-laws and the express contracts between the parties, appellee agreed to pay stated sums monthly, for dues on stock, interest on loan, and premium on loan, until the stock would mature. The stock would not mature until these dues on stock together with the stock's proportionate share of the association's earnings from interest, premiums, fines, fees, and the like reached $100 per share. When she became a member, and before she became a borrower, she agreed to pay the monthly dues on stock for sixty payments only and was to receive back the face value of the stock whenever it reached par. When she became a borrower, she agreed to pay these monthly dues or instalments on stock, with interest and premium, not for sixty payments only, but until the stock matured as provided by the by-laws; that is, she agreed to make these payments until the monthly instalments or dues on stock and this stock's earnings made the stock worth $100 per share. It is found as a fact that these monthly instalments or dues on the six shares of stock amount to $351, and that this stock's share of the earnings is $83.97, a total of $434.97. It is thus seen that appellee has not continued to make the payments she agreed to make until the stock matured as provided by the by-laws.

The case of *International, etc., Assn.* v. *Bratton,* 24 Ind. App. 654, cited by appellee, presents a different question. That case correctly holds that the debt was extinguished when the borrower had made a stipulated number of payments, because the mortgage expressly provided that the mortgagors should in no event be required to pay the monthly payments for a period greater than seventy-eight months from the date of the mortgage. In *Lime City, etc., Assn.* v. *Wagner,* 122 Ind. 78, 17 Am. St. 342; under a by-law providing that "all loans shall become due in six years from the date of this corporation, or on the stock of the association becoming of par value, in either of which cases the note given by the borrower, and the stock upon which the loan was made, shall be set off against each other," it was held that the borrower who pays weekly dues and instalments for a period of six years discharges his obligation to the association, and that the liability of the borrower did not extend beyond that period. There is no such provision in question in the case at bar.

The judgment is reversed, with instructions to restate a conclusion of law in appellant's favor.