## WAYNE INTERNATIONAL BUILDING & LOAN ASSOCIATION *v.* GILMORE ET AL.

[No. 4,984. Filed November 1, 1904. Rehearing denied January 12, 1905. Transfer denied January 12, 1906.]

BUILDING AND LOAN ASSOCIATIONS.—*Mortgages.*—*Misrepresentations.*—*Fraud.*—*Opinions.*—Where defendant executed his bond and mortgage to a building and loan association, and received a certificate of stock therefrom, which bond, mortgage and certificate obligated defendant to make 60 payments on such stock according to the by-laws, and such by-laws provided that as soon as such payments and the profits thereon were sufficient to make such stock worth par such stock would cancel such loan, the fact that plaintiff's agent represented, and defendant relied thereon, that such 60 payments would mature such stock and cancel said loan, constitutes no defense, being a mere opinion upon which defendant had no right to rely. *Hartman* v. *International Bldg., etc., Assn.*, 28 Ind. App. 65, distinguished.

From Superior Court of Madison County; *H. C. Ryan,* Judge.

Suit by the Wayne International Building & Loan Association against Charles I. Gilmore and others. From a decree for defendants, plaintiff appeals. *Reversed.*

*A. R. Feemster* and *D. W. Howe,* for appellant.

*Walker & Foster,* for appellees.

ROBINSON, J.—Suit by appellant to foreclose a mortgage given to secure a bond executed by appellee Gilmore. The

complaint avers that appellant issued to Gilmore a certificate of stock for five shares in class A of appellant association; that afterwards Gilmore borrowed from appellant $500, and executed a bond for that sum, and a mortgage to secure the same; that, after making a certain number of payments, Gilmore refused to make further payments, leaving a balance still due and unpaid. The certificate of stock, the bond, mortgage and by-laws of appellant are made parts of the complaint. The certificate of stock certifies that appellee Gilmore is a shareholder in appellant association, and holds five shares of the par value of $100 each, and that in consideration of the membership fee, together with the statements and agreements in the application for membership and stock, and of a full compliance with the charter and by-laws of appellant, which are referred to and made part of the contract, and the payment of $1, not later than the 25th day of each month, on each share named in the contract, for sixty months, unless the stock should sooner mature, appellant promises to pay to the holder the sum of $100 for each share named therein, whenever the monthly payments made in pursuance of the contract, and an equitable proportion of the profits shall amount to the par value of the stock. The bond contains the provision that whereas Gilmore has subscribed for five shares of stock of the face value of $100 each, for which he received the sum of $500 as a loan, which shares of stock are thereby transferred as collateral security for the payment of the bond, he agrees, on his part, that he will continue to pay monthly dues on the stock at the rate of $1 per month on each share as provided by the by-laws of appellant, together with a premium of fifty cents per month on each share, and interest at six per cent per annum, all to be due and payable on the 1st and delinquent on the 25th day of each month, until such shares mature as provided by the by-laws of appellant. The mortgage contains the provision, that it is executed and intended as

security for the performance of the stipulations and agreements of the bond, conditioned that appellee Gilmore shall continue to pay monthly dues upon five shares of the capital stock at the rate of $1 per month on each share of stock as provided in the by-laws, together with a premium of fifty cents per month on each share, and interest on the loan at six per cent per annum, due and payable on the 1st and delinquent after the 25th day of each month until the shares mature as provided by the by-laws of appellant. The by-laws of appellant provide, among other things, that the instalment stock of appellant is issued in three classes. Classes A, B and C shall be paid for in monthly instalments of $1, eighty cents and forty cents, respectively, and the stockholders' liability for such instalments shall be limited to sixty, seventy-two and one hundred eight instalments, respectively; also that stock issued in classes A, B and C shall mature as soon as the total loan-fund portion of the monthly instalments, with accumulated profits, shall equal $100 per share.

Appellee Gilmore in his fourth paragraph of answer admits the issuance to him of the five shares of stock, and that afterwards he borrowed the sum of $500 thereon, executing the bond described in the complaint, and also executing to the appellant the mortgage described and set out in the complaint, and that the by-laws of appellant are referred to and made a part of the certificate of stock issued to him, and in both the bond and mortgage the by-laws are referred to, and in the bond and mortgage it is provided that payments shall be made until the shares mature as provided by the by-laws of appellant. He alleges that at the time of and before the issuance of the stock he was desirous of making a loan of $500, and at that time he had no knowledge of the rules governing loan associations or the rights of persons becoming members thereof, and that for the purpose of inducing him to become a member, and to execute the bond and mortgage sued on, appellant, its offi-

cers and agents, falsely and fraudulently represented to him that if he would become a member and shareholder, and subscribe for five shares of stock of the face value of $100 each, and pay $1 per share monthly in advance for sixty months, appellant would pay him the sum of $500, and that if he would execute the bond and mortgage now in suit, and pay in addition thereto the premium of fifty cents per month on each share of stock, and interest on the loan at six per cent per annum, the stock would be thereby matured, the debt would thereby be fully paid, the mortgage and bond would be canceled, and he would be relieved from any further liability thereon; that he would be required to pay on the loan, for the maturity of his stock and the full payment of the loan, only sixty monthly payments, with premium and interest thereon; that appellant's agent exhibited to appellee a copy of the certificate of stock, wherein it is provided that the payment of $1 not later than the 25th day of each month on each share for a period of sixty months, unless the stock shall sooner mature, shall constitute the total number of payments to be made on such stock, and wherein appellant promises to pay the holder $100 for each share named therein whenever the monthly payments made in pursuance of the contract and the equitable apportionment of the profits shall amount to the par value of the stock; that appellant's agent also exhibited to appellee Gilmore a copy of the by-laws of appellant, containing the provisions hereinabove set out; that the language above set out as a part of the certificate was embodied in the certificate of stock issued to Gilmore, as averred in the complaint, and that the by-laws above mentioned were in force at the time the contract was entered into by Gilmore and the loan made; that appellant, by its agent, in explaining the language and meaning of the certificate of stock, and the by-laws above mentioned, and the bond and mortgage to be executed in the matter of the loan now in suit, represented and stated to appellee Gilmore that

such payments for such period would mature the stock, pay and satisfy the bond and mortgage, and discharge him from all liability thereon; that the proper and true meaning and construction of these sections of the by-laws and clause contained in the certificate was to the effect that Gilmore should pay sixty payments only, together with the interest and premium thereon in order to mature the stock and fully pay the bond and mortgage debt, and that such representations and explanations were so made for the purpose and with the intention of misleading and defrauding Gilmore by inducing him to purchase the stock and execute the obligation sued on in this action; that, at the time of such representations and explanations, appellant and its agents well knew that the same were false and fraudulent, and that they were made for the purpose of misleading appellee Gilmore and inducing him to become a member of appellant and make the loan; that, believing such representations and explanations so made to be true, and wholly relying on them, and having no other means of knowing the truth or falsity thereof, he took out the stock and executed the bond and mortgage. Appellee Gilmore further alleges that if he had not believed such false and fraudulent representations he would not have become a member, and would not have executed the bond and mortgage; that before the bringing of this action he had made payments for sixty months regularly each month, together with all dues and interest, and had paid appellant thereon the sum of $600; that he made such payments, relying on the representations so made to him that the sixty payments would mature the stock and pay the bond and mortgage, and that he made all such payments in the full belief that they would fully mature the stock and pay and discharge the bond and mortgage, and all liability on account thereof; that at the end of sixty months, and after having made sixty payments of dues, with all premiums and interest thereon, and after having fully paid the debt according to the terms of the

contract, he demanded the cancelation and release of the bond and mortgage, and the return thereof, but appellant refused so to do, claiming that the stock was not matured, and the bond and mortgage were not yet fully paid; that appellee Gilmore then for the first time learned of the falsity of such statements and representations, and that thereby a fraud had been perpetrated upon him to become a member of appellant and take stock and execute the bond and mortgage.

The demurrer to this fourth paragraph of answer was overruled, and this ruling is assigned as error. The demurrer to this answer should have been sustained. Appellee Gilmore may have been induced to enter into the transaction by the representations made, but when he signed the bond and mortgage he agreed to comply with the stipulations therein contained. The bond and mortgage, and the by-laws made a part of each, state very plainly the manner in which the debt may be discharged. He obligated himself in the bond and mortgage to continue to make certain specified monthly payments "until such shares mature as provided in the by-laws," and the by-laws provide that the stock shall mature as soon as the total loan fund portion of the monthly instalments, with accumulated profits, shall equal $100 per share. As a stockholder, he was to pay for sixty months only, but would receive the par value of his stock, as the certificate of stock says, whenever the monthly payments and an equitable apportionment of the profits should amount to the par value. This might have been some time after he had ceased making the monthly payments. As a borrower, he was not to pay for sixty months only, and have his debt canceled whenever the monthly payments and an equitable apportionment of the profits should amount to the par value; but he agreed, by the bond and mortgage, to continue to make these monthly payments until the shares should mature, and the shares would not mature, the by-laws say, until the total loan-fund portion

of the monthly instalments, with accumulated profits, should equal $100 per share.   Appellee Gilmore was a member of appellant association.   He must not only take notice of its by-laws, but, in this case, the by-laws are expressly made a part of his contract.   The bond and mortgage and the provisions of the by-laws are not susceptible of the construction given them by the representations made by the agent of appellant.   It is not shown that Gilmore was in any way prevented from knowing all these provisions when he signed the bond and mortgage.   There was no relation of trust or confidence between him and appellant's agent.   See *American Ins. Co.* v. *McWhorter* (1881), 78 Ind. 136; *Miller* v. *Powers* (1889), 119 Ind. 79, 4 L. R. A. 483; *Robinson* v. *Glass* (1884), 94 Ind. 211. While the representations alleged in the answer might, if standing alone, be representations of facts, yet, as the by-laws provide that the stock shall not mature until the loan-fund portion of the monthly instalments, with accumulated profits, shall equal $100, and as it is not possible to determine in advance what the future profits of the association will be, such representations, when taken in connection with the by-laws, were no more than the expression of the opinion held by the agent making them.   See *Myers* v. *Alpena Loan, etc., Assn.* (1898), 117 Mich. 389, 75 N. W. 944; *Campbell* v. *Eastern Bldg., etc., Assn.* (1900), 98 Va. 729, 37 S. E. 350; *Winget* v. *Quincy Bldg., etc., Assn.* (1889), 128 Ill. 67, 21 N. E. 12; *Gale* v. *Southern, etc., Assn.* (1902), 117 Fed. 732; *O'Malley* v. *People's Bldg., etc., Assn.* (1895), 92 Hun 572, 36 N. Y. Supp. 1016; *Wayne, etc., Assn.* v. *Skelton* (1901), 27 Ind. App. 624; *Union Mut., etc., Assn.* v. *Aichele* (1901), 28 Ind. App. 69; *Noah* v. *German-American Bldg. Assn.* (1903), 31 Ind. App. 504.

Counsel for appellee Gilmore cite the case of *Hartman* v. *International Bldg., etc., Assn.* (1901), 28 Ind. App. 65, and state in their brief that upon the authority of that case the demurrer to this paragraph of answer was overruled.

The answer in that case and the answer in the case at bar are substantially the same, but the complaints to which they are directed are very different. In the case of *Hartman* v. *International Bldg., etc., Assn., supra,* the only condition in the bond or mortgage as to the payments to be made .or the maturity of the stock was that if the appellant should pay the appellee "the sum of a loan of $800, this day to him made, on or before the maturity of the shares herein pledged as collateral security" and five per cent interest and five per cent premium, and seventy-five cents per share monthly as dues and perform the covenants· of the mortgage, then the bond was to be void. In that case no reference is made to any by-law in either the bond or mortgage; in this case reference is made to the by-laws in both the bond and mortgage. In that case no by-laws were set out in any of the pleadings; in this case they are.· In that case the bond and mortgage did not, in and of themselves, necessarily charge the borrower with the information that he was to pay a certain specified sum for an indefinite period of time; in this case the bond, mortgage and by-laws do necessarily charge appellee with the information that the loan was to be paid by monthly payments for a period of time necessarily uncertain in duration. In that case the representations made were not inconsistent with a reasonable construction of the only condition in the bond as to the payments to be made or the maturity of the stock; in this case the representations made were inconsistent with a reasonable construction of the conditions in the bond and mortgage and the provisions of the by-laws. In the opinion in that case reference is expressly made to the fact that no by-law is set out in the pleading, and no reference is made to any by-law in either the bond or the mortgage, and the opinion further states that "the bond and mortgage in the case at bar, so far as disclosed by the pleadings, stand alone, and their interpretation and meaning are not affected by any by-law, of the provisions of which a member must take

154   APPELLATE COURT OF INDIANA,

Indiana Rolling Mill Co. *v.* Gas Supply, etc., Co.—37 Ind. App. 154.

notice." We still adhere to the ruling in that case, but the question presented in that case and the question in the case at bar are by no means the same.

The demurrer to the fourth paragraph of answer should have been sustained. Judgment reversed.