## AMERICAN BUILDING AND LOAN ASSOCIATION v. HUGHES.

[No. 7,053.   Filed June 23, 1910.]

1. BUILDING AND LOAN ASSOCIATIONS.—*Maturing of Loans.—Representations.—Special Findings.—Conflict.—Burden of Proof.*—A special finding that defendant building and loan association represented to the plaintiff that her mortgage would be canceled when she had made 84 payments thereon, even though considered as a representation of fact, and another finding that the loan would be canceled when the stock had matured, are conflicting, and nullify each other, and a finding of payment "in the manner as heretofore set out" does not affect the result, the plaintiff, on whom the burden of proof rests, thereby failing to sustain her case.   p. 251.

2. BUILDING AND LOAN ASSOCIATIONS.—*Maturity of Loans.*—Loans from a building and loan association ordinarily mature when the value of the shares reach the amount of the loan.   p. 252.

3. BUILDING AND LOAN ASSOCIATIONS.—*Notes and Mortgages.—Contracts.—Ignorance of.*—The relationship between a building and loan association and a borrower not being one of trust, the borrower's ignorance of the contents and legal effect of the note and mortgage given, does not relieve her.   p. 252.

4. BUILDING AND LOAN ASSOCIATIONS.—*Representations.—Opinions.*—A representation by the secretary of a building and loan association that a borrower's loan would be canceled when 84 payments were made when considered with the note and mortgage given, which provided that the mortgage would be canceled when the stock should mature, is the expression of an opinion.   p. 253.

5. FRAUD.—*Misrepresentations.—Knowledge of Falsity.—Agency.*—To constitute a fraudulent misrepresentation of the maturity of a building and loan mortgage, the agent making the misrepresentation must know of the falsity thereof.   p. 253.

From Crawford Circuit Court; *C. W. Cook,* Judge.

Action by Sallie Hughes against the American Building and Loan Association.   From a judgment for plaintiff, defendant appeals.   *Reversed.*

*Hawkins, Smith & Hawkins,* for appellant.
*Ewing & Roose,* for appellee.

COMSTOCK, C. J.—Appellee brought this suit to compel appellant to satisfy a mortgage which she, as owner, had executed on certain real estate. She alleged payment thereof, and demanded the statutory penalty for refusal to satisfy said mortgage. The appellant filed a cross-complaint asking for judgment for the balance due on the obligation executed by appellee to appellant, and for the foreclosure of its mortgage upon the realty described therein.

The cause was put at issue, submitted to the court, a special finding of facts made and conclusions of law were stated thereon, to which appellant excepted and the court rendered judgment in favor of appellee.

The errors assigned and relied on for reversal are that the court erred (1) in its conclusion of law upon the special findings, (2) in its conclusion of law upon the finding that plaintiff was entitled to have her mortgage satisfied of record, and (3) in its conclusion of law upon the finding that plaintiff should recover from defendant the statutory penalty of $25, and $15 attorneys' fees.

The special findings show that appellant association issued to appellee a certificate for four shares of its capital stock, Class A, of the face value of $400; that said loan was made through the secretary of the association; that plaintiff "became a member of the association, only for the purpose of becoming a borrower, and at no time had in her possession a copy of the by-laws of the association, nor any knowledge of their contents;" that appellee borrowed $350 from appellant, and executed her note and mortgage to secure it.

The note signed by appellee and her husband, and made a part of the finding, provides that on account of the loan made by the association to Sallie Hughes, for value received, "we promise to pay to the American Building and Loan Association of Indiana, $350, with ten per cent attorneys'

fees, payable when the stock she owns in said association, on account of which said loan is made, matures; at which time this note and mortgage securing it will be surrendered to the maker thereof, and said stock canceled, and until said stock does mature, we agree to pay to said American Building and Loan Association the sum of $5.50 per month, payable on or before the 20th day of each and every month, said sum being premium, interest and dues, in accordance with the by-laws of said association, and the mortgage securing this note, which is made a part hereof.''

Said note provides that the shares of stock No. 2,568 are transferred and pledged as collateral security for the performance of the conditions of the note and mortgage.

The mortgage, signed by appellee and her husband, is set out in the findings. It mortgages and warrants to said association the realty described in the complaint, and recites that it is executed and intended as a security for the performance of the stipulation and agreements of the parties set forth in the note in question. This note provides that Sallie Hughes "shall continue to pay the monthly dues upon her four shares of stock of $100 each, at the rate of fifty cents a share each month, and an annual interest of six per cent, payable monthly, together with all fines and assessments that may be assessed against said shares herein by reason of any default of said shareholder in any of the stipulations contained in this mortgage.''

The court further found that plaintiff paid to defendant, at the rate of $5.50 per month for eighty-four months, beginning with December, 1897, a total of $462, the last payment being made in December, 1904, and that for six months thereafter no demand was made by defendant for any further payments; that in order to induce said plaintiff to negotiate the loan, said secretary represented to her that if she would accept said loan and pay thereon $5.50 a month for eighty-four months defendant would release the mortgage and the note at the end of that time and return them to her;

that said secretary made said offer and representations on paper, with his name signed thereto, and gave the paper to plaintiff; that said paper has been lost; that said plaintiff relied on said written representations, believing that on the payment of said amount her mortgage would be released; that plaintiff was unaccustomed to transacting business, and was wholly ''ignorant of the abstruse verbiage'' of building and loan notes and mortgages, wherein it was stated that she was to pay the $350 when the stock matured, and that she should pay it at the rate of $5.50 a month; that she did not read said mortgage, and did not hear it read, and would not have understood it if she had; that in the whole matter she relied upon the offer and representations of said secretary, as before set out; that in said written offer and representation made by said secretary, he did not express an opinion as to how many payments plaintiff would be required to make, but represented the fact to be that plaintiff's said property would be released from said mortgage upon her making eighty-four payments of $5.50 each, and that he made such representations for the purpose of inducing plaintiff to accept said loan and execute said note and mortgage, and plaintiff believed them and relied upon them; that prior to the bringing of this action plaintiff, in writing, requested defendant to release the mortgage, and that such request was refused; that prior to such request plaintiff had paid the mortgage debt in the manner as heretofore set out.

We have two special findings of fact: (1) The secretary of the association represented as a fact, and not as an opinion, that if appellee would accept the loan and pay thereon $5.50 a month for eighty-four months, appellant would release said mortgage and cancel said note at the end of that time, and return them to her; (2) that by the note and the mortgage given to secure the payment of the loan, appellee agreed to pay to the association the sum of $5.50 a month until the stock matured, said sum be-

ing premium, interest and dues, in accordance with the by-laws of said association.

Crediting appellee with the finding of the court that the statement as to the eighty-four payments by the secretary of the association was the statement of a fact, and not an opinion, the conflict is clear in these two special findings, and one is nullified by the other.

The burden was upon appellee to show that the stock was paid according to the terms of the contract. The only finding of payment is that it was paid ''in manner as heretofore set out,'' that is, by the eighty-four payments. There is no finding that the stock had matured when the last payment was made. The relation existing between the members of a building association is that of a *quasi* partnership. The members share in the profits and losses. The shares 2. are matured by the payment of dues and the accumulation of property. They can only reach their par value when the payment of dues and accumulation of profits have reached an actual value of $100 a share. If a shareholder is allowed to withdraw $100 a share when he has paid in seventy instalments of ninety cents each, or $63, whether the association has made or lost money, the element of mutuality would be destroyed, and inequality result to other members of the association. Such construction would be unreasonable. *Union Mutual, etc., Assn.* v. *Aichele* (1901), 28 Ind. App. 69, and cases cited.

The findings show an ordinary business transaction between appellant and appellee. There was no relation of trust and confidence between appellee and the secre- 3. tary of the association. She was not prevented from knowing the terms of the note and mortgage which she signed. The finding, that she ''did not read said mortgage, and did not hear it read, and would not have understood it if she had,'' is not sufficient to release her from the duty of making an effort to understand the contract she was executing.

MAY TERM, 1910.  253

American Building, etc., Assn. *v.* Hughes—46 Ind. App. 248.

"When the representations of the agent are taken in connection with the provisions and conditions in the certificate of stock, by-laws, bond and mortgage, they cannot be said to be representations of facts, but were no more than the expression of the opinion held by the agent making them." *Guaranty Sav., etc., Assn.* v. *Simko* (1905), 35 Ind. App. 412, and cases cited. Fraud inducing the execution of a written instrument is not merged in the written contract, but there is no misrepresentation found to have been made as to the written instruments which appellee executed without making any effort to ascertain their contents. Conceding, however, that the representation was not the expression of an opinion, but the statement of a fact, the element of fraud is lacking. There is no finding that the agent of the association knew that said representation was false. The case of *Wiley* v. *Commonwealth, etc., Sav. Assn.* (1909), 43 Ind. App. 209, is strongly in point, and treats of fraudulent representations by the agent, and that the making of a certain number of payments on the stock would cancel the loan. It was there held that when the mortgage and bond required payment of interest and premium until the stock matured, such representations are no defense in a suit to foreclose the mortgage. See, also, *Guaranty Sav., etc., Assn.* v. *Simko, supra; Miller* v. *Wayne, etc., Loan Assn.* (1904), 32 Ind. App. 480; *Wayne, etc., Loan Assn.* v. *Gilmore* (1906), 37 Ind. App. 146; *Wayne, etc., Loan Assn.* v. *Skelton* (1901), 27 Ind. App. 624.

A calculation based upon the facts found show that appellee has not paid to the association the principal of the loan, together with the interest and premiums, as provided in the note and the mortgage.

Judgment reversed, with instructions to restate the conclusions of law and render judgment in favor of appellant in accordance with this opinion.