## Richmond

BLUE RIDGE PROPERTY OWNERS ASSOCIATION, INC., ET AL. v. A. LEWIS MILLER, ET AL.

January 16, 1976.

Record No. 741192.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Ross W. Krumm* (*Robert M. Musselman*, on briefs), for appellants.

*W. W. Whitlock*, for appellees.

POFF, J., delivered the opinion of the court.

This appeal arises out of a dispute concerning an election of the board of directors of the Blue Ridge Property Owners Association, Inc. (BRPOA), a Virginia non-stock, non-profit corporation chartered in 1960 for the management of the affairs of owners of property in Blue Ridge Shores, a community on Lake Louisa.

BRPOA was a party in earlier litigation concluded by final order entered December 7, 1973, in which the trial court ruled that the board election held on May 18, 1973 was invalid and that the prede-

cessor board elected on March 1, 1971 (the holdover board) was empowered to act pending election and qualification of a successor board. This order was never appealed and is binding on BRPOA here.

The bylaws adopted January 8, 1966 provided in part:

"Every member entitled to vote at any meeting may so vote either personally or by proxy. At all elections of Directors, the voting may but need not be by ballot and a majority of the votes cast shall elect."

At a meeting on December 26, 1973, the holdover board adopted revisions of the bylaws, one sentence of which was further amended on April 6, 1974. Insofar as relevant here, the revisions as amended (revised bylaws) stated that:

"Members shall be entitled to vote for the election of Directors and on any issues which are proper subjects for a membership vote under the non-stock corporation law of Virginia. On issues other than election of the Board of Directors which are proper subjects for a membership vote, any member may vote either in person or by proxy."

The revised bylaws also provided detailed procedures for mail ballot voting in board elections.

On April 19, 1974, certain members of BRPOA[1] (complainants) filed a bill of complaint against BRPOA, the individual members of the holdover board,[2] and the individual members of the board whose election had been nullified in the previous litigation[3] (collectively, respondents). Proceeding under Code § 13.1-221[4] (Repl. Vol. 1973),

---

[1] A. Lewis Miller, Leonard J. Matthews, Francis L. Breese, A. C. Bourne, W. M. Schwab, Louis P. Lohr, Shirley Harper, Walter M. Kendrick, David S. Breeden, Marion McNeil, and Sandra M. Feagans.

[2] S. F. Stoneburner, Charles E. Moyer, George C. Long, Glenn McWhorter, Joseph A. Tosti, Russell D. McDonald, William Budowitz, Spencer Marlow, and Edward G. White.

[3] George C. Long, Tilden Grant, Leo Gross, Joseph A. Tosti, Dorothy Behncke, Harry D. Knauf, Spencer Marlow, and Charles E. Moyer.

[4] In pertinent part, this statute provides:

. . .

"Any member or director aggrieved by an election of directors may, after reasonable notice to the corporation and each director whose election is contested, apply for relief to the judge of a Virginia court of equity in the county or city in which the registered office of the corporation, or its principal place of business in Virginia, is located, whether in term or in vacation. The judge shall proceed forthwith in a

complainants alleged that the holdover board "resumed office without authority", that it had no power to adopt the revised bylaws, and that the provision in the revised bylaws prohibiting proxy votes was unlawful. Complainants prayed that respondents be enjoined from conducting the board election scheduled for May 18, 1974, and asked the chancellor to appoint receivers "to conduct a properly held election".

At a hearing on April 30, 1974, the chancellor orally denied the injunction, ruled that the holdover board was empowered to act until the next election, appointed counsel of record as special commissioners to supervise a board election on May 18, 1974, and instructed the commissioners to report, *inter alia*, "[a]ny proxies denied or rejected".

At the election, 64 proxy votes were tendered but rejected. One of the commissioners reported that, excluding proxy votes, one slate of candidates[5] had been elected. The other commissioner reported that, counting proxy votes, another slate[6] had been elected.

By final decree entered August 9, 1974, the chancellor held that the proxy votes should be counted and that the candidates who received the highest number of votes, including proxy votes, had been elected. Appellants (BRPOA and all respondents except Russell D. McDonald and Charles E. Moyer) assigned error, and appellees (the complainants and Russell D. McDonald and Tilden Grant) assigned cross-error.

■ The assignment of cross-error challenges the chancellor's ruling that the holdover board was the duly constituted board at the time the revised bylaws were adopted.

> "Failure [of a corporation] to elect officers results in continuing the old officers in power. Thus, where the corporation fails to hold its regular annual meeting for the election of directors, the directors then in office hold over until their successors are elected. Moreover, *the directors then in office hold over and retain title to*

summary way to hear and decide the issues and thereupon to determine the persons elected or order a new election or grant such other relief as may be equitable. Pending decision the judge may require the production of any information and may by order restrain any person from exercising the powers of a director if such relief be equitable in all the circumstances."

[5] Tilden Grant, Leland Talbott, George C. Long, Dan Coulthart, James W. Breeden, Dorothy Behncke, Charles E. Moyer, Charles W. Ale, and Arvid J. Dahlquist.

[6] Tilden Grant, James W. Breeden, Charles W. Ale, Paul Snyder, A. Lewis Miller, Konrad Bailer, Joyce LeVay, Robert B. Stocks, Jr., and Melva Rowe.

*their office when the election of their successors is null and void."* (Emphasis added). 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 344 (Rev. Vol. 1969; Cum. Supp. 1975).

In accord with this rule, we hold that where, as here, a court of competent jurisdiction declares an election of corporate directors invalid, the directors in office at the time of such election hold over and retain title to their offices until their successors have been validly elected and qualified. We find no merit in the assignment of cross-error.

■ Under their assignments of error, appellants argue that the chancellor "exceeded his equitable power and jurisdiction in ruling . . . that proxy votes could be counted".

Code § 13.1-212 (Repl. Vol. 1973) states that "[t]he power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the bylaws." Here, there is no such proscription against that power. In fact, the January 8, 1966 bylaws and the revised bylaws specifically provided that "[t]hese By-Laws may be amended, altered or repealed by any meeting of the Board of Directors by affirmative vote of a majority of all of the Directors." Code § 13.1-217 (Repl. Vol. 1973) states that members of non-stock corporations "may vote in person or, unless the articles of incorporation or the bylaws otherwise provide, may vote by proxy". Here, the revised bylaws provide that members may not vote by proxy in board elections.

The chancellor found, and we agree, that the holdover board had the power to amend the bylaws and that the revised bylaws prohibiting proxy votes "are legally sound." The chancellor held, however, that "this Court finds that the constitutional considerations involved justify its use of equity powers in contravening the provisions of Section 13.1-217 of the Code of Virginia and the By-laws of BRPOA to allow the sixty-four (64) proxy votes . . . to be counted". The "constitutional considerations" were explicated in the final decree:

"Because of the mandatory membership requirement and the power of BRPOA to levy assessments, there are certain constitutional rights involved which are not generally involved in a non-stock corporation, and that these constitutional rights are related to the ability of a member to vote in the election of members to the Board of Directors of BRPOA, the members' ownership of property, and the burdens placed on a member's property."

Defending the chancellor's ruling, appellees contend that the right to vote for directors by proxy authorized in the January 8, 1966 bylaws was a vested contractual right related to property rights which could not be divested by amendments to the bylaws.

It has been held that provisions in bylaws "in the nature of a contract which are evidently designed to vest property rights *inter se* among all stockholders . . . cannot be repealed or changed without the consent of the other parties whose rights are affected." *Bechtold v. Coleman Realty Co.*, 367 Pa. 208, 213, 79 A.2d 661, 663 (1951). But there was no such provision here. Although the articles of incorporation conferred upon members "the right to vote and other privileges of membership", those articles also stated that "directors of the corporation are to be selected by the vote of the members *as provided for in the bylaws*" (emphasis added). Those who purchased property and acquired membership in BRPOA were bound by that provision. They were also charged with knowledge of and bound by statutory law which empowered the board to amend the bylaws generally and to amend the bylaws specifically to prohibit proxy votes for directors. Thus, the January 8, 1966 bylaws created no "vested right" exempt from subsequent changes in the bylaws.[7] The "right to vote" as defined in the articles of incorporation was fully secured by the revised bylaws authorizing members to vote for directors in person or by mail.

We hold that the chancellor erred in ruling that constitutional considerations justified the exercise of equity powers to contravene the statute, articles of incorporation, and bylaws, and the decree is reversed.

The cause is remanded for entry of a new decree. The new decree will provide that the nine candidates who received the highest number of votes, excluding proxy votes, cast at the May 18, 1974 election will become the duly constituted board of BRPOA; and that the terms of office of the members of this board will be fixed in accordance with the provisions of Article VI, Section 2 of the bylaws, except that the terms of office of the three classes of directors will com-

[7] *See Building Ass'n v. Snyder*, 98 Va. 710, 37 S.E. 298 (1900), where we applied New York corporation law to the contractual relationship between a building and loan association and one of its members. There, we held that while the association could not alter its bylaws so as " 'to change the essential character of an antecedent agreement between a member and the association' ", a member is " 'subject not only to regulations existing when he becomes a member, but to such as may be enacted from time to time by the association within the scope of the power given by statute.' " 98 Va. at 718, 37 S.E. at 301.

mence effective upon the date of the entry of the new decree and expire one year, two years, and three years, respectively, from "the third Saturday in May" 1976, the date fixed in Article V, Section 1 of the revised bylaws as the date of the next annual meeting of the members of BRPOA.

*Reversed and remanded.*