Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, JJ., and Stephenson and Whiting, Senior Justices

VIRGINIA HIGH SCHOOL LEAGUE, INC.

v.  Record No. 970053

OPINION BY
SENIOR JUSTICE HENRY H. WHITING
October 31, 1997

J.J. KELLY HIGH SCHOOL

FROM THE CIRCUIT COURT OF WISE COUNTY
Willis A. Woods, Judge Designate

In this appeal, we apply corporate bylaws to resolve an issue between a nonstock corporation and one of its members.

J.J. Kelly High School (Kelly) is a member of the Virginia High School League, Inc. (the League), a nonstock corporation organized to "foster among the public high schools of Virginia a broad program of supervised competitions and desirable school activities as an aid in the total education of students."  The principals of the over 280-member high schools and 14 other persons comprise the members of the Legislative Council in which the "general legislative powers of the League" are vested.

Classifying high schools into three groups based on student membership in each school, bylaw §§ 11-1-1 and 11-2-1 define student membership for "classification purposes only . . . [as] original entries plus reentries minus withdrawals in grades 10, 11 and 12."  As applicable here, bylaw § 11-1-1 directs that classifications be made "according to each school's membership on September 30 of the immediately preceding odd-numbered year."  Under bylaw § 11-2-1, the group classifications are based on the following student memberships in the various high schools:  (1) Group A, 500 or fewer students; (2) Group AA, from 501 to 1,000 students; and (3) Group AAA, 1001 or more students.

Under bylaw § 21-1-1, each group is divided into districts within the State and the various schools are assigned to districts within their group classification. Bylaw § 21-2-1 provides that districts are established by group boards upon approval of (1) redistricting study committee recommendations or (2) requests from several schools within the same general area of the State for their inclusion in a new district. However, pursuant to bylaw § 21-2-3, districts may also be established "by a Redistricting and Reclassification Committee appointed by the League Chairman on authority of the Legislative Council. The plan of redistricting and reclassification proposed by the committee, when approved by the Executive Committee, . . . shall be final."

In March 1995, the Legislative Council resolved "to appoint a Redistricting and Reclassification Committee in accordance with 21-2-3 of the Handbook to gather data from schools, develop a plan of redistricting and reclassification of [all schools and all classes] and submit the plan to the Executive Committee for final approval at the September [30, 1995] meeting." The committee was appointed, collected data from the schools, and, on July 29, 1995, submitted tentative redistricting and reclassification plans to its member school principals which, under bylaw § 11-1-1, would become effective in 1996. However, instead of calculating school membership by using the September 30, 1995, attendance figures of tenth through twelfth graders,

the committee used figures from March 31, 1995, of students in the ninth through eleventh grades. The figures in these plans showed Kelly as having a membership of 512 students, thus removing it from Group A classification and placing it in Group AA and, therefore, in a different district.

Kelly asserts that even though its protests against reclassification to the redistricting committee and the executive committee were unavailing, a correct application of the method prescribed by the bylaws would demonstrate that its student membership was less than 501 persons. Consequently, Kelly filed this suit to enjoin the League from executing its plan to change Kelly's group status from Group A to Group AA and to transfer Kelly from its former Lonesome Pine District of Group A to the Highlands District of Group AA. After an ore tenus hearing, the chancellor issued a written opinion in which he held that the League had arbitrarily and capriciously violated its own bylaws in reclassifying Kelly and directed counsel to prepare a decree enjoining such reclassification.

Upon being advised that the parties had agreed to permit Kelly to remain in Group A pending the League's appeal of the court's judgment, the chancellor entered a decree directing the parties to comply with that agreement pending the appeal to this Court. We awarded an appeal to the League.

The League contends that bylaw § 21-2-3 is "an alternative means to redistrict and reclassify already in the bylaws." It

also argues that because the Redistricting and Reclassification Committee report had to be submitted at the Executive Committee's September 30 meeting, it would have been impossible to include school membership figures from that same day as required by bylaw § 11-2-1. Accordingly, the League asserts that the committee's decision to use the March 31 figures for ninth through eleventh grade students was a reasonable construction of its rules.

Kelly responds that the language of the bylaw sections in controversy is unambiguous and that we should give effect to the plain meaning of that language. We agree with Kelly.

Ordinarily, nonstock corporations and their members are controlled by the corporate bylaws. See Code § 13.1-823(B); Blue Ridge Property Owners Ass'n v. Miller, 216 Va. 611, 615, 221 S.E.2d 163, 166 (1976); cf. Knights of Columbus v. Burroughs' Beneficiary, 107 Va. 671, 680, 60 S.E. 40, 43 (1908) (member of mutual benefit society bound by its bylaws). And, courts apply the bylaws in resolving disputes between those parties. See, e.g., Blue Ridge Property Owners Ass'n, 216 Va. at 615, 221 S.E.2d at 166.

Moreover, "[t]he rules used to interpret statutes, contracts, and other written instruments are applicable when construing corporate bylaws." 8 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 4195 (perm. ed. rev. vol. 1992). Hence, courts will not attempt to look beyond the language of bylaws written in unambiguous terms. Id.; cf.

Seoane v. Drug Emporium, Inc., 249 Va. 469, 475, 457 S.E.2d 93, 96 (1995) ("[I]f such contractual language is unambiguous, . . . we do not apply rules of construction or interpretation; we simply give the language its plain meaning"); Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) ("If [statutory] language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it").  Similarly, when bylaw language is unambiguous, we need not defer to an interpretation of a corporation's various boards and committees.

In this case there is no need to interpret or construe the unambiguous language of bylaw § 11-1-1 requiring the League to classify schools based upon student membership in "grades 10, 11, and 12" as of "September 30 of the immediately preceding odd-numbered year."  This language tells the League exactly how the student membership of each member high school must be determined in classifying a particular school.  Nor does any language in bylaw § 21-2-3 conflict with this requirement, as suggested by the League.  Although empowering the Redistricting and Reclassification Committee to reclassify schools and establish districts, nothing in bylaw § 21-2-3 suggests that the committee's "means" of doing so can be other than that plainly set forth in bylaw § 11-1-1.

Hence, we cannot accept the League's suggestion that the time constraints imposed upon the Redistricting and

Reclassification Committee by the Executive Committee authorized either of the committees or the League to use a different method for determining student population.  Such an authorization would, as the chancellor indicated, effectively permit those committees to amend the bylaws.  Bylaw § 25-4-1 vests the power of amendment solely in the Legislative Council and sets forth specific procedures for amendment, none of which was followed here.

Accordingly, we conclude that the League action was a violation of its bylaws and is, therefore, invalid.  For this reason, we will affirm the trial court's judgment and remand the case for any further proceedings that may be necessary, consistent with this opinion.

<u>Affirmed and remanded</u>.