COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia

MARK MCLEOD, ET AL.

            MEMORANDUM OPINION[*] BY
v.  Record No. 0957-23-4     JUDGE VERNIDA R. CHANEY
              MAY 6, 2025
ERIC PAREKH, ET AL.


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Petula C. Metzler,[1] Judge

Dirk McClanahan (McClanahan Powers, PLLC, on briefs), for
appellants.

Matthew A. Westover (Garth M. Wainman; Walsh, Colucci,
Lubeley & Walsh, P.C., on brief), for appellee Eric Parekh.

W. Benjamin Woody (Brennan J. McGovern; Stanley P. Wellman;
Thomas S. Garrett; M. Scott Fisher, Jr.; Nancy J. Goodiel;
Harman, Claytor, Corrigan & Wellman; DeCaro, Doran, Siciliano,
Gallagher & DeBlasis, LLP, on brief), for appellees Wade
Haskins, My Freedom Church, Inc., Deryck Frye, and Connect
Church.


Mark McLeod, Chantel McLeod, Damon McLeod, (collectively, the McLeods) and Church

on the Move, Inc. (Move Church) appeal from the circuit court's order confirming an arbitration

award in favor of Eric Parekh, Wade Haskins, Deryck Frye, My Freedom Church, Inc., and Connect

Church (the appellees).  That arbitration involved the faith-based resolution of various claims by the

McLeods arising from a dispute within Move Church.  The McLeods assign error to the circuit

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Metzler entered the final order confirming the arbitration award.  Judge Steven S.
Smith presided over the hearing on the appellees' motion to compel arbitration.

court's decision to compel arbitration, arguing that there was no evidence of an agreement to arbitrate and their claims were not arbitrable.

This Court finds that (1) there was an agreement to arbitrate and (2) the arbitrability of the McLeods' claims was contractually delegated to the arbitrator. The circuit court, therefore, did not err, and this Court affirms its judgment.

BACKGROUND

Mark McLeod is the pastor and founder of Move Church. Chantel McLeod is Mark's wife, and Damon McLeod is Mark's son. Parekh was Move Church's executive pastor. Frye and Haskins were Move Church's overseers, who provided counseling and advice to Mark McLeod on personal, spiritual, and business matters. Frye was also the pastor of Connect Church in Massachusetts, and Haskins was also the pastor of My Freedom Church in Maryland.

From March to May 2019, the relationship between the McLeods and the appellees suffered a "breakdown" as allegations against Damon McLeod for sexual misconduct against Parekh's minor child surfaced. At that time, the McLeods were assisting Damon with his mental health struggles. At Parekh, Frye, and Haskin's urging, Mark took a six-week sabbatical from his work at Move Church. In May 2019, the Parekhs allegedly informed Child Protective Services of the allegations against Damon. While Mark and Chantel were in Europe, Parekh allegedly apprised the Move Church Board of Trustees of the situation with the McLeods. Frye and Haskins also met with the Board of Trustees and encouraged Mark to take a year-long sabbatical given the allegations. When Mark refused, Frye, Haskins, and Parekh organized a mass resignation of all of Move Church's trustees, overseers, and pastoral staff members. The McLeods and Move Church then sued the appellees for defamation and defamation per se, malicious prosecution, fraud, breach

of fiduciary duty and breach of loyalty, tortious interference with business expectancy, and common law and statutory business conspiracy.[2]

The appellees responded by filing a "Plea in Bar/Motion to Compel Mediation and Arbitration" under § 19.5 of Move Church's bylaws:

> In keeping with 1 Corinthians 6:1-8, all disputes which may arise between any member of the Church and the Church itself, or between any member of the Church and any Pastor, Trustee, Overseer, Elder, Director, officer, employee, volunteer, agent, or other member of this Church, shall be resolved by mediation, and if not resolved by mediation, then by binding arbitration under the procedures and supervision of the Rules of Procedure for Christian Conciliation, Institute for Christian Conciliation. In the event that this group ceases to exist during the course of this Agreement, arbitration under this section shall be conducted according to the rules of the American Arbitration Association. Judgment upon an arbitration award may be entered in any court otherwise having jurisdiction. The parties each agree to bear their own costs related to any mediation or arbitration proceeding including payment of their own attorneys' fees. Either party may file a motion seeking temporary injunctive relief from a court of competent jurisdiction in order to maintain the status quo until the underlying dispute or claim can be submitted for mediation or arbitration.
>
> If a dispute may result in an award of monetary damages that could be paid under a Church insurance policy, then use of the conciliation, mediation, and arbitration procedure is conditioned on acceptance of the procedure by the liability insurer of the Church and the insurer's agreement to honor any mediation, conciliation or arbitration award up to any applicable policy limits.

The circuit court held a hearing on the appellees' motion to compel. There, the circuit court found that the bylaws were admitted into evidence:

---

[2] The McLeods sought leave to file an amended complaint on January 28, 2020. The amended complaint contained non-substantial alterations to the "timing of events which form the basis of [the McLeods'] claims. The claims asserted in the original Complaint and the Amended Complaint remain the same, as do Plaintiffs' request for damages." The circuit court compelled arbitration on March 3, 2020, before it could rule on the McLeods' motion for leave to file an amended complaint. The contents of the amended complaint, therefore, are unimportant to our analysis.

THE COURT: I'm indicating that yes, they are in evidence, the bylaws.

And we've discussed and then referred to [section] 19.5 particularly was discussed [sic] directly from these bylaws.

[THE MCLEODS' COUNSEL]: *And that's fine.* I just want to make sure that I understand what is in evidence and what we're dealing with and how we're handling it . . . .

. . . .

[T]o the extent that this is evidentiary in nature, then I would move to strike saying that the evidence at this point has been insufficient because the only evidence we have is that there are bylaws . . . and there are segments of this information that have been listed. We don't have information that the pleading is not included as to the dates, timings, [sic] there's nothing that the Court can consider other than their own bylaws that, in fact, say things.

. . . .

I would just indicate for the record that . . . the only thing in evidence is a *copy* of the bylaws, and an indication that [the McLeods] are, in fact, members of the church.

(Emphases added). After the hearing, the trial court found "enough in the facts of this case to link these actions to the inner workings of the church and the individuals involved" to "trigger[] the applicability of the arbitration clause." Accordingly, the court stayed the proceedings and ordered the parties to proceed to mediation and then arbitration.

On December 19, 2022, an arbitrator entered a final award denying all claims against the defendants on scriptural and legal grounds and awarding them some of their attorney fees. On March 30, 2023, the appellees moved the trial court to lift the stay and enter judgment on the arbitrator's award. The trial court entered final judgment confirming the arbitration award. The McLeods appeal.

## ANALYSIS

The McLeods assign 11 errors to the circuit court's decision to compel arbitration, but they can be considered as two arguments: the circuit court erred by (1) finding the existence of

an arbitration agreement and (2) finding their claims arbitrable.  The appellees disagree and assert that the appellants waived their arguments because the McLeods (1) acquiesced to years-long mediation and arbitration and (2) failed to comply with the Virginia Uniform Arbitration Act (VUAA).  Code §§ 8.01-581.01 to 8.01-581.016.  This Court finds that the McLeods preserved their ability to appeal but finds no error in the circuit court's judgment.

## I.  The McLeods preserved their appeal.

### A.  *The McLeods could not appeal until the circuit court issued its final order confirming the arbitration award.*

The appellees assert that the McLeods did not comply with the procedural requirements of the VUAA in bringing this appeal.  The appellees are incorrect.  Code § 8.01-581.016 specifies seven orders that a party may appeal from in an action involving arbitration:

> 1.  An order denying an application to compel arbitration made under § 8.01-581.02;
>
> 2.  An order by a general district court granting an application to compel arbitration;
>
> 3.  An order granting an application to stay arbitration made under subsection B of § 8.01-581.02;
>
> 4.  An order confirming or denying an award;
>
> 5.  An order modifying or correcting an award;
>
> 6.  An order vacating an award without directing a rehearing; or
>
> 7.  A judgment or decree entered pursuant to the provisions of this article.

An order from the circuit court compelling arbitration is neither a final order nor an appealable order under this statute.  *Seguin v. Northrop Grumman Sys. Corp.*, 277 Va. 244, 248 (2009).  Under Code § 8.01-581.016, the McLeods could not appeal the circuit court's order compelling arbitration until the court issued the final order.  *Seguin* was decided before the VUAA was amended to include appeals from orders compelling arbitration from the "general district court."

*Compare id.*, *with* 2016 Va. Acts ch. 181. The amendment to the VUAA does not diminish *Seguin's* controlling force. The fact that the legislature explicitly provided an appeal from a "general district court" order compelling arbitration indicates that it intended *not* to enable an appeal from the "circuit court." *See, e.g.*, *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 682-83 (2024) ("[T]he 'negative-implication canon,' presumes that 'when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code . . . the difference in the choice of language was intentional.'" (alteration in original) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011))); *Brown v. Kirkpatrick*, 79 Va. App. 252, 260 (2023) (en banc) ("[W]hen the General Assembly has used specific language in one instance[] but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." (alterations in original) (quoting *Zinone*, 282 Va. at 337)). The McLeods objected but the circuit court nevertheless ordered mediation and arbitration. Under *Seguin* and the plain text of the VUAA, the McLeods could not have made an interlocutory appeal from the circuit court's order until the court issued a final order. *Cf., e.g.*, *Heald v. Rappahannock Elec. Coop.*, 80 Va. App. 53, 74 (2024) ("The primary objective of statutory [interpretation] is to determine legislative intent. In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." (alteration in original) (quoting *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008))). Under the VUAA, there was no appealable order in this case until the circuit court issued its order confirming the arbitration award.

B. *The VUAA did not require the McLeods to move to vacate the arbitration award before seeking appellate review.*

Appellees assert that appellants waived their appeal by failing to move to vacate the arbitration award, citing *Marks v. Marks*, 36 Va. App. 216 (2001):

> In Virginia, a "trial court's review of an arbitration award is governed by specific statutory criteria," and "the party attacking an arbitrator's award bears the burden of proving the invalidity of the award." The [VUAA] . . . provides the exclusive means for challenging errors in the award by the arbitrator and sets forth the procedures for obtaining judicial review and confirmation of the arbitration award.

*Id.* at 223 (quoting *Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153 (1995)). *Marks* does not apply because it dealt with the ability to challenge an award under Code § 8.01-581.010(5). *Marks* did not set forth an exhaustion regime that the appellants had to pursue before taking their appeal to this Court following an adverse decision under Code § 8.01-581.02. *See id.* at 229 n.5 (noting the contents of Code § 8.01-581.016(1), which only allows interlocutory appeals from decisions denying the compulsion of arbitration).

The VUAA requires a motion to vacate when the circuit court did not grant a motion to compel arbitration over the appellants' objection. "Upon application of a party, the court shall vacate an award where . . . [1] [t]here was no arbitration agreement *and* [2] the issue was not adversely determined in proceedings under § 8.01-581.02 *and* [3] the party did not participate in the arbitration hearing without raising the objection." Code § 8.01-581.010(5) (emphases added). The word "and" in the statute tells us that a party needs to meet all three of these requirements. *Doe v. Green*, 81 Va. App. 556, 572 (2024) ("When a statutory phrase uses the conjunctive word 'and,' we naturally assume that the legislature intended the word to 'have its ordinary, literal conjunctive meaning.'" (quoting *Barr v. Atl. Coast Pipeline, LLC*, 295 Va. 522, 552 (2018))). First, there *is* an arbitration agreement here. Second, the circuit court compelled arbitration in a decision adverse to the appellants. Code § 8.01-581.010(5) therefore does not apply to this situation.

Rather, the McLeods challenged arbitration under Code § 8.01-581.02(A):

> On application of a party showing an agreement described in [Code] § 8.01-581.01, and the opposing party's refusal to arbitrate,

the court shall order the parties to proceed with arbitration. However, if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue of the existence of an agreement and shall order arbitration only if found for the moving party.

This is the procedure the McLeods followed before the circuit court, and as emphasized above, proceeding under Code § 8.01-581.02 is exclusive of proceeding under Code § 8.01-581.010(5). Neither *Marks* nor the VUAA required the appellants to move to vacate the arbitration award to preserve their appeal. Under Code § 8.01-581.016, the McLeods could not have appealed the order compelling arbitration until the circuit court entered its final order. *See Seguin*, 277 Va. at 248 ("Code § 8.01-581.016 does not grant a right to appeal an order granting an application to compel arbitration.").

C. *The McLeods did not waive their arguments by acquiescing to mediation and arbitration.*

The McLeods did not acquiesce to mediation in arbitration and so did not thereby waive appellate review of the order compelling arbitration. Indeed, the McLeods challenged the appellees' motion to compel arbitration under Code § 8.01-581.02. Thereafter, the McLeods complied with the circuit court's order compelling arbitration. "Generally, 'a waiver' is 'a voluntary abandonment of some known legal right, advantage, or privilege . . . .'" *City-to-City Auto Sales v. Harris*, 78 Va. App. 334, 345 (2023) (quoting *Travis v. Finley*, 36 Va. App. 189, 200 (2001)). Complying with a lawful order from the circuit court is not a volitional act of acquiescence. *Cf. Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 275 (E.D. Va. 2004) ("It is clear that a 'judicially compelled' disclosure is not a voluntary one. Thus, because it produced the documents to Micron only after a judge ordered it to do so, Rambus did not waive any privilege by disclosing the documents to Micron." (citation omitted)); *Wells v. Liddy*, 186 F.3d 505, 535 (4th Cir. 1999) ("She was compelled to go to court by the State in order to obtain legal release from the bonds of matrimony. . . . In such an instance resort to the judicial process . . . is

no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court." (alterations in original)); *Radin v. United States*, 699 F.2d 681, 683 (4th Cir. 1983) ("The provision for arbitration is not a voluntary undertaking, but rather is compelled by the [Railway Labor Act].").

The appellees assert that the McLeods assign error to the wrong order—arguing that they should have assigned error to the final order confirming the arbitration award rather than the order compelling arbitration. The appellants did not need to assign error to the final award. Under our caselaw, the McLeods appropriately specified the error in the circuit court's order compelling arbitration:

> A properly crafted assignment of error will "point out the specific errors claimed to have been committed by the court below." Such specificity "enable[s] the reviewing court and opposing counsel to see on what points plaintiff's counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points."

*Whitt v. Commonwealth*, 61 Va. App. 637, 646-47 (2013) (en banc) (alteration in original) (quoting *First Nat'l Bank of Richmond v. William R. Trigg Co.*, 106 Va. 327, 341 (1907)). To challenge the order compelling arbitration, contrary to the appellees' arguments, the McLeods did not need to object to the final order *itself*. The McLeods challenge the order compelling arbitration, and that challenge is preserved.

II. There was no error in finding the McLeods' claims arbitrable.

A. *The record supports finding an enforceable agreement to arbitrate.*

The McLeods assert that no evidence allowed the circuit court to find the existence of a binding agreement to arbitrate. This Court reviews "a circuit court's interpretation of contractual language de novo." *Brush Arbor Home Constr., LLC v. Alexander*, 297 Va. 151, 154 (2019). However, this Court reviews the circuit "court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit

- 9 -

evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the [circuit] court. Rather, we consider only whether the record fairly supports the [circuit] court's action." *Id.* (first alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).

It is well-established that bylaws are contracts. *See Gottlieb v. Economy Stores, Inc.*, 199 Va. 848, 856 (1958) ("The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts." (quoting *Bradley v. Wilson*, 138 Va. 605, 612 (1924))). Our review of the circuit court's interpretation of those bylaws is de novo. *See Tel. Square II v. 7205 Tel. Square, LLC*, 77 Va. App. 375, 396 (2023). The agreement to arbitrate is found in Move Church's bylaws. The appellees moved those bylaws into evidence. The McLeods argue that only certain highlighted portions of the bylaws were entered into evidence. However, the circuit court expressly found that all the bylaws were entered into evidence:

> THE COURT: I'm indicating that yes, they are in evidence, the bylaws.
>
> And we've discussed and then referred to [section] 19.5 particularly was discussed [sic] directly from these bylaws.

The McLeods evidently conceded that the bylaws were in evidence:

> [THE MCLEODS' COUNSEL]: And that's fine. I just want to make sure that I understand what is in evidence and what we're dealing with and how we're handling it . . . .
>
> . . . .
>
> [T]o the extent that this is evidentiary in nature, then I would move to strike saying that the evidence at this point has been insufficient because the only evidence we have is that there are bylaws . . . and there are segments of this information that have been listed. We don't have information that the pleading is not included [sic] as to the dates, timings, [sic] there's nothing that the Court can consider other than their own bylaws that, in fact, say things.

. . . .

> I would just indicate for the record that . . . the only thing in evidence is a copy of the bylaws, and an indication that [the McLeods] are, in fact, members of the church.

Thus the bylaws were properly before the circuit court.

When a party enters a voluntary association or corporation, that party is contractually bound to that organization's constitution and bylaws. *Gottlieb*, 199 Va. at 856 ("The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which . . . will be enforced by the courts." (quoting *Bradley*, 138 Va. at 612)); *Va. High Sch. League v. J.J. Kelly High Sch.*, 254 Va. 528, 531 (1997) ("Ordinarily, nonstock corporations and their members are controlled by the corporate bylaws. And, courts apply the bylaws in resolving disputes between those parties.").

The McLeods assert that there was insufficient evidence before the circuit court establishing them as members of Move Church. However, they conceded that they were members of Move Church:

> [PAREKH'S COUNSEL]: I'd like to ask Mr. McClanahan if he'd stipulate to the facts that . . . [the McLeods are] members [of Move Church] . . . . Is there any dispute to these facts?
>
> [THE MCLEODS' COUNSEL]: No, we have no objection that they are members.
>
> [THE MCLEODS' COUNSEL]: I would just indicate for the record that . . . the only thing in evidence is a copy of the bylaws, and an indication that [the McLeods] are, in fact, members of the church.

Because all parties were members[3] of Move Church at the time the McLeods' allegations arose, they were bound by its bylaws.

---

[3] At oral argument, the McLeods raised a question as to whether the appellees were members of Move Church. However, the McLeods did not raise this issue before the circuit court, in their assignments of error, or their opening brief. We will not consider an argument first raised in oral argument on appeal. *See, e.g.*, Rule 5A:18 ("No ruling of the [circuit court]

Courts may only refuse to enforce bylaws if they are immoral, contrary to public policy, or contrary to the law. *Gottlieb*, 199 Va. at 856. "Virginia's public policy favors 'arbitration and the validity of arbitration agreements.'" *City-to-City*, 78 Va. App. at 344 (quoting *TM Delmarva Power, LLC v. NCP of Va., LLC*, 263 Va. 116, 122 (2002)). An agreement to arbitrate contained within a corporation's bylaws, therefore, is presumably consistent with public policy. The bylaws provide:

> In keeping with 1 Corinthians 6:1-8, all disputes which may arise between any member of the Church and the Church itself, or between any member of the Church and any Pastor, Trustee, Overseer, Elder, Director, officer, employee, volunteer, agent, or other member of this Church, shall be resolved by mediation, and if not resolved by mediation, then by binding arbitration under the procedures and supervision of the Rules of Procedure for Christian Conciliation, Institute for Christian Conciliation. In the event that this group ceases to exist during the course of this Agreement, arbitration under this section shall be conducted according to the rules of the American Arbitration Association. Judgment upon an arbitration award may be entered in any court otherwise having jurisdiction. The parties each agree to bear their own costs related to any mediation or arbitration proceeding including payment of their own attorneys' fees. Either party may file a motion seeking temporary injunctive relief from a court of competent jurisdiction in order to maintain the status quo until the underlying dispute or claim can be submitted for mediation or arbitration.

Bylaws § 19.5. There is no assertion that these bylaws are immoral or contradict the law. Nor does the record reveal the basis for such assertions. The circuit court did not err by finding an enforceable agreement among the members of Move Church.

---

. . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."); *Payne v. Payne*, 77 Va. App. 570, 592 n.5 (2023) ("A matter not in dispute before the [circuit] court will not be considered for the first time on appeal." (quoting *Commonwealth ex rel. Breakiron v. Farmer*, 32 Va. App. 430, 437 (2000))). Even so, while the McLeods' complaint alleged that the appellees acted in the capacity as the leaders of their respective churches, the claims arose when the appellees were members of Move Church. *See* Compl. ¶¶ 8-10 (identifying Parekh as executive pastor, and Frye and Haskins as overseers of Move Church at "all times relevant").

B. *The McLeods' claims were arbitrable.*

The McLeods assert that their claims do not arise out of their membership with Move Church, and as such the circuit court erred in finding that their tort claims were arbitrable. Generally, it is up to an arbitrator to determine the arbitrability of a claim. *See Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 160 (2008) ("The arbitrator based his ruling on Rule R-7(a) of the Commercial Arbitration Rules of the American Arbitration Association . . . . Rule R-7(a) makes the arbitrator the sole judge of the issue of arbitrability."), *superseded by statute on other grounds by* Code § 13.1-1023 (governing operating agreements).

When the parties agree to have an arbitrator determine their jurisdiction, we will enforce that determination. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (construing the American Arbitration Association[4] rules). The Guidelines for Christian Conciliation—incorporated by Move Church's bylaws—specify that the "arbitrator shall have the power to rule on his/her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." The arbitrator here found the McLeods' claims arbitrable. We will not disturb that decision on appeal.

C. *The appellees did not need to obtain Move Church insurance company's acquiescence before engaging in arbitration.*

The McLeods argue that the appellees needed to obtain an insurance company's permission before engaging in arbitration. Move Church's bylaws provide:

> If a dispute may result in an award of monetary damages that could
> be paid under a Church insurance policy, then use of the

---

[4] The VUAA is "substantially similar in pertinent parts" to the Federal Arbitration Act (FAA). *Marks*, 36 Va. App. at 223 (citing *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000)). Moreover, Move Church's bylaws follow the model prescribed by the American Arbitration Association. *See* Bylaws § 19.5 ("[A]rbitration under this section shall be conducted according to the rules of the American Arbitration Association."). We therefore find federal cases construing the FAA persuasive. *See McKeithen v. City of Richmond*, 302 Va. 422, 440 n.7 (2023) ("We thus view the federal precedents as persuasive, but not binding, authority.").

- 13 -

conciliation, mediation, and arbitration procedure is conditioned on acceptance of the procedure by the liability insurer of the Church and the insurer's agreement to honor any mediation, conciliation or arbitration award up to any applicable policy limits.

Bylaws § 19.5. By its plain text, this provision applies to claims *against* Move Church that might result in an insurance payout. It does not apply to claims *by* Move Church. Move Church, along with the McLeods, brought their claims against the appellees. The appellees then moved for arbitration. The appellees' movement of the McLeods' claims to arbitration is therefore not "a dispute [that] may result in an award of monetary damages that could be paid under a Church insurance policy."

There are two financial realities, however, that could complicate our analysis: (1) the appellees obtained an award of attorney fees[5] incurred against the McLeods and (2) appellee Parekh requested indemnification from Move Church's insurance carrier. The McLeods do not press an argument over attorney fees on appeal, and so we do not consider this issue. As for indemnification, the record does not show that Move Church's insurer agreed to indemnify the appellees for damages incurred from the McLeods' claims. Moreover, it is not obvious that a request for indemnification is a qualifying "dispute" under Move Church's bylaws.

It is unclear, therefore, that the appellees had to obtain Move Church's insurer's permission to go to arbitration. Certainly, the arbitrator did not consider the failure to obtain the insurer's permission to be a bar to mediation and arbitration. As explained above, by agreeing to be bound by Move Church's bylaws the parties agreed to accept and so this Court accepts the arbitrator's decision on the arbitrability of the McLeods' claims.

---

[5] Section 19.5 of the bylaws provide that the "parties each agree to bear their own costs related to any mediation or arbitration proceeding including the payment of their own attorney's fees." Given our rulings above, the arbitrator's apparent deviation from this provision is not appropriate for this Court to address.

- 14 -

Given the existence of an enforceable arbitration agreement and the ability of the arbitrator to determine its jurisdiction, contractually agreed upon by the parties, this Court finds no error in compelling arbitration.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*